JAMES R. CARCANO, JOANNE CARCANO AND CARCANO REALTY GROUP, LLC, PLAINTIFFS v. JBSS, LLC, AND DAVID BROWDER, LUCY BROWDER & JASON BROWDER, DEFENDANTS

No. COA08-1423

(Filed 6 October 2009)

**1. Appeal and Error— interlocutory order—substantial right—possibility of inconsistent verdicts**

Plaintiffs' appeal from an interlocutory order dismissing their claims for unjust enrichment, unfair and deceptive trade practices, common law fraud/breach of fiduciary duty, constructive trust, and punitive damages affected a substantial right and was entitled to immediate appellate review because there were factual issues common to the dismissed claims and the remaining breach of contract claim which could result in inconsistent verdicts.

**2. Contracts— breach of contract—summary judgment**

There were numerous issues of fact and law that precluded summary judgment on a breach of contract claim.

**3. Trusts— constructive trust—summary judgment**

The trial court did not err by granting summary judgment in favor of defendants on a constructive trust issue because defendants did not, as a matter of law, come into possession or control of the legal title to the pertinent properties.

**4. Unfair Trade Practices— failure to show affect on commerce—summary judgment**

The trial court did not err by granting summary judgment for defendants on the issue of unfair and deceptive trade practices because the alleged events and statements did not affect commerce outside the parties' limited business relationship.

**5. Fraud— constructive fraud—breach of fiduciary duty—mistake—summary judgment**

The trial court did not err by granting summary judgment in favor of defendants on the issues of fraud, constructive fraud, and breach of fiduciary duty based on the alleged misrepresentation of the legal existence of a limited liability company. There was no evidence of an intent to deceive and plaintiffs could not show that defendants participated in a transaction through which they sought to benefit themselves.

CARCANO v. JBSS, LLC

[200 N.C. App. 162 (2009)]

**6. Unjust Enrichment— summary judgment—no better legal position**

The trial court did not err by granting summary judgment in favor of defendants on the issue of unjust enrichment because defendants were in no better legal position than plaintiffs and were not unjustly enriched.

**7. Damages and Remedies— punitive damages—summary judgment—breach of contract**

The trial court did not err by granting summary judgment in favor of defendants on the issue of punitive damages under N.C.G.S. § 1D-15. Punitive damages are not awarded against a person solely for breach of contract.

Appeal by plaintiffs from order entered 3 October 2008 by Judge Laura J. Bridges in Rutherford County Superior Court. Heard in the Court of Appeals 7 April 2009.

*King Law Offices, PLLC, by Brian W. King, for plaintiff appellants.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Esther E. Manheimer, for defendant appellees.*

HUNTER, JR., Robert N., Judge.

James Carcano, individually, and Carcano Realty, LLC ("plaintiffs"), seek damages arising out of their investments in North Carolina real estate purchased with David Browder, Lucy Browder, and Jason Browder (the "Browders"). Plaintiffs' theories include claims for breach of contract, unfair and deceptive trade practices, common law fraud/breach of fiduciary duty, unjust enrichment, constructive trust, and punitive damages. On 3 October 2008, the trial court heard cross motions for summary judgment and dismissed all of plaintiffs' claims except breach of contract. From this order of partial summary judgment, plaintiffs appeal.

We affirm.

## I. Facts

James Carcano ("Carcano"), a licensed New York attorney, owns Carcano Realty Group, LLC ("Carcano Realty"), a New York limited liability "corporation." Defendants David Browder, Lucy Browder, and Jason Browder are all citizens and residents of South Carolina.

CARCANO v. JBSS, LLC

[200 N.C. App. 162 (2009)]

In November 2005, Lucy Browder purchased two pieces of Rutherford County property, 93 Flynn Court and 237 Wren Court. According to the deeds, ownership was vested in "JBSS, LLC." The Browders intended to sell these and other pieces of property in the Lake Lure area. After the purchase of these lots, in November 2005, Felix Carcano, a long-time friend and business acquaintance of David Browder, introduced David Browder to his brother, Carcano. Carcano, Felix Carcano, and the Browders then entered a business arrangement to buy undeveloped lots for development in the Lake Lure area in a newly created or soon to be formed entity presumably a limited liability company "JBSS, LLC."

The parties and David Browder agreed that ownership in the venture was to be shared: Lucy Browder (David Browder's spouse), 33%; James Carcano, 33%; Felix Carcano, 33%; and Jason Browder, 1%. In this business arrangement, David Browder was to be the manager of the venture and would handle the research, day-to-day business, purchases of property, negotiate contracts for construction and oversee property development. The parties agree that the venture was to share profits. To capitalize the business, Carcano and Felix Carcano were to contribute $100,000 each to the business, and Lucy Browder was to contribute the 93 Flynn Court and 237 Wren Court properties. The parties disagree upon whom the responsibility fell to prepare a written, formal operating agreement that would reflect the above-mentioned terms.

Despite the failure to complete the proper organization of a limited liability company at this earlier time, David Browder operated under the "mistaken" belief and represented to Carcano that "JBSS, LLC" was properly formed as a limited liability company. According to David Browder, the "mistaken" belief was based upon communications with a South Carolina law firm where his wife, Lucy Browder, was employed in which another employee of the firm stated to him that the "LLC" had been formed.

In December 2005, David Browder, purportedly acting on behalf of "JBSS, LLC," signed contracts to purchase land from the Fairfield Mountains Property Owners' Association. Carcano Realty sent approximately $24,000.00 electronically to David Browder for earnest money deposits. Of these funds $16,000.00 was returned to David Browder, and Fairfield properties retained $8,000 which was applied to an application fee and security deposit for the development of the vacant lot 53 Flynn Court.

CARCANO v. JBSS, LLC

[200 N.C. App. 162 (2009)]

David Browder, purportedly acting for "JBSS, LLC," contracted to purchase three additional properties in the Fairfield Mountains subdivision including: 3 Apple Valley Forest, 215 Quail Ridge, and 12 Roundabout. To purchase the Quail Ridge property, on 28 March 2006, Carcano Realty Group transferred $11,000.00 to the closing attorney's escrow account. In May 2006, David Browder requested funds from Carcano to purchase the other two properties. Carcano Realty then transferred $60,000.00 on 15 May 2006 to purchase the Apple Valley Forest and Roundabout properties. The final purchase prices for the properties were: 215 Quail Ridge ($15,000.00); 12 Roundabout ($39,000.00); and 3 Apple Valley ($20,000.00).

After the purchase of these properties, the parties discovered that "JBSS, LLC" had not been formed.[1] Plaintiff filed suit on 14 November 2006, which was subsequently answered by defendants on 30 January 2007. Discovery ensued.

On 28 August 2008, David Browder formed an entity entitled "JBSS, LLC", in South Carolina by filing the Articles of Organization with the Secretary of State of the State of South Carolina. These articles do not mention plaintiffs as members or managers of the newly formed entity. Counsel for defendants contacted the grantors of all five properties requesting that the grantors execute new deeds to the newly formed entity, "JBSS, LLC." No new deeds for the properties are included in the record.

On the cross motions for summary judgment, the trial court denied plaintiffs' motion for summary judgment and granted defendants' motion for summary judgment on all claims except breach of contract. Plaintiffs appeal.

## II.  Issues

On appeal plaintiffs contend that the trial court erred in granting partial summary judgment to defendants and failing to grant summary judgment to plaintiffs for: (1) unfair and deceptive trade practices, where defendants induced plaintiffs to invest in "JBSS, LLC" through misleading and fraudulent representations; (2) unjust enrichment, where defendants exercised dominion over plaintiffs' invest-

---

1. As discussed hereinafter, this litigation concerns only a dispute between the alleged purchasers or investors in the four lots described above. The record contains no evidence that any of the parties have taken action to secure valid ownership through litigation or otherwise to the four lots or have taken action to clarify the legal status of the limited liability company. The legal effect of this lack of evidence is discussed under Section B hereinafter.

ment and were unjustly enriched; (3) constructive trust, where defendants fraudulently obtained plaintiffs' money and used it to purchase the property held in an entity in which plaintiffs had no control; (4) common law fraud, where defendants knowingly made false representations about the status of the LLC to induce plaintiffs to continue funding the venture; and (5) punitive damages, where defendants acted fraudulently. Plaintiffs also contend the trial court erred by denying a grant of summary judgment to plaintiffs for their claim for breach of contract where defendants failed to grant plaintiffs an agreed upon proportional interest in án LLC.

### III.  Standard of Review

A grant of summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). An appeal from an order granting summary judgment solely raises issues of whether on the face of the record there is any genuine issue of material fact, and whether the prevailing party is entitled to judgment as a matter of law. *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 352, 595 S.E.2d 778, 781 (2004). A defendant may show entitlement to summary judgment by: "(1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense which would bar the claim." *James v. Clark*, 118 N.C. App. 178, 181, 454 S.E.2d 826, 828, *disc. review denied*, 340 N.C. 359, 458 S.E.2d 187 (1995). After the required showing is made by the party seeking summary judgment, the burden is then on the " 'nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial.' " *Draughon v. Harnett Cty. Bd. Of Educ.*, 158 N.C. App. 705, 708, 582 S.E.2d 343, 343 (2003) (citation omitted), *affirmed per curiam*, 358 N.C. 137, 591 S.E.2d 520, *reh'g denied*, 358 N.C. 381, 597 S.E.2d 129 (2004). We review a trial court's ruling on summary judgment de novo. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

### IV.  Analysis

**[1]** As a preliminary matter, plaintiffs argue this appeal is properly before this Court as an appeal from an interlocutory order affecting a substantial right, pursuant to N.C. Gen. Stat. § 1-277 and N.C. Gen.

Stat. § 7A-27(d)(1). An interlocutory order or judgment is one which is "made during the pendency of an action and does not dispose of the case but requires further action by the trial court in order to finally determine the entire controversy." *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 37, 626 S.E.2d.315, 320, *disc. review denied*, 360 N.C. 531, 633 S.E.2d 674 (2006). An interlocutory order may be appealed, however, pursuant to N.C. Gen. Stat. § 1-277, which provides in pertinent part:

> (a) An appeal may be taken from every judicial order or determination of a judge of a superior or district court, upon or involving a matter of law or legal inference, whether made in or out of session, which affects a substantial right claimed in any action or proceeding[.]

N.C. Gen. Stat. § 1-277(a) (2007). Similarly, N.C. Gen. Stat. § 7A-27(d) recognizes that some actions have potentially serious consequences, such as when a "substantial right" is affected, and thus warrant an appeal. *See* N.C. Gen. Stat. § 7A-27(d)(1) (2007). If a trial court's decision "deprives the appellant of a substantial right which would be lost absent immediate review," an appeal of an interlocutory order is permitted. *Bob Timberlake Collection, Inc.*, 176 N.C. App. at 37, 626 S.E.2d at 320.

"With respect to those interlocutory orders which allegedly do affect a substantial right, our Supreme Court has additionally long required that the interlocutory 'ruling or order deprive . . . the appellant of a substantial right *which he would lose if the ruling or order is not reviewed before final judgment.*'" *J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 5, 362 S.E.2d 812, 815 (1987) (quoting *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 207, 240 S.E.2d 338, 343 (1978)). If a party is faced with the possibility of undergoing a second trial, a substantial right is affected "when the same issues are present in both trials [which] creat[es] the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue." *Green v. Duke Power Co.*, 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982); *cf. Oestreicher v. Stores*, 290 N.C. 118, 130, 225 S.E.2d 797, 805 (1976) (explaining plaintiff had the substantial right to have all "causes" tried at the same time by the same judge and jury, irrespective of issues).

In the case *sub judice*, the trial court's grant of partial judgment to defendants is an interlocutory order because plaintiffs' claim for

breach of contract remains pending. In *Davidson v. Knauff Ins. Agency*, this Court stated that "so long as a claim has been finally determined, delaying the appeal of that final determination will ordinarily affect a substantial right *if* there are overlapping factual issues between the claim determined and any claims which have not yet been determined." 93 N.C. App. 20, 26, 376 S.E.2d 488, 492, *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989). Here, the trial court's dismissal of plaintiffs' claims for unjust enrichment, unfair and deceptive trade practices, "common law fraud/breach of fiduciary duty," constructive trust, and punitive damages affects a substantial right since there are factual issues common to the dismissed claims and the breach of contract claim it did not dismiss. *See, e.g., Vazquez v. Allstate Ins. Co.*, 137 N.C. App. 741, 745, 529 S.E.2d 480, 482 (2000) (Under North Carolina law, a plaintiff may maintain a breach of contract claim and an unfair and deceptive trade practices claim based on the same conduct.) Common to all claims is the factual issue of whether defendants caused plaintiffs' damages by falsely representing that "JBSS, LLC," validly existed as an LLC and by inducing plaintiffs to invest in the business. Because there are overlapping factual issues, inconsistent verdicts could result. We hold, thus, that the trial court's grant of partial summary judgment to defendants affects a substantial right, and plaintiffs' appeal is properly before us.

## A. Breach of Contract

[2] "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement. *Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995).

All parties, based upon the pleadings, appear to be in agreement that at sometime in November 2005, a contract was formed between plaintiffs and the Browders. Thereafter, each party contends that the terms of that agreement were modified or breached. The debate between the parties includes the issues of managerial control over the assets of the business, the form of the organization, capitalization of the enterprise, the withdrawal of equity members, and the responsibility of the parties to memorialize their agreement. Most, if not all, of these issues could be resolved had the business arrangement been reduced to writing; regretfully, it was not, and the legal consequences which flow from this omission produce this result. Subsequently, it is

likely that N.C. Gen. Stat. § 59-36(a) (2007) which defines a partnership as an "association of two or more persons to carry on as co-owners a business for profit[]" will resolve these matters for the parties.

Given genuine factual disputes forecast by the parties in the verified pleadings and deposition testimony which was produced in the record for review, there appears to be numerous genuine issues of fact and law which would preclude summary judgment on the breach of contract issue. For example, plaintiffs allege in their complaint that Carcano thought he was investing in an already formed limited liability company. Later, Carcano and Felix Carcano were each to contribute $100,000 in capital to the business, while Lucy Browder was to contribute the 93 Flynn Court and 237 Wren Court properties. Subsequently, Felix Carcano failed to make his contribution and allegedly this contribution was assumed by Joanne Carcano who later withdrew from the venture.

At the outset of the venture, Lucy Browder was to contribute land to the venture; however, it appears the deeds to the subject property which she was to contribute were void, since they were conveyed to a non-existent entity, "JBSS, LLC."

In his deposition, Carcano testified, "I was assured that a partnership agreement was being written and would be forthcoming." When asked, "And that would be what you considered to be the contract[,]" he replied, "Yes." Carcano had offered at one point to draft the partnership agreement he referenced, but the agreement was never drafted. He likewise admitted that he had never asked to see any documentation as to the agreement of the formation of the LLC. Given that both parties agree that some contractual arrangement was entered into, what the terms were and whether they were breached is a genuine question of fact requiring jury resolution.

## B. Constructive Trust

[3] Plaintiffs pled for the court to impose the remedy of a constructive trust based upon their allegations of "fraud/breach of fiduciary duty" or "unjust enrichment." As discussed, *supra*, we do not believe plaintiffs have been able to show a forecast of evidence sufficient to raise genuine issues of facts with regard to these two claims. Constructive trusts ordinarily arise from actual or constructive fraud and usually involve the " 'breach of a confidential relationship.' " *Patterson v. Strickland*, 133 N.C. App. 510, 521, 515 S.E.2d 915, 921 (1999) (citation omitted). "Fraud is not automatically presumed by the 'mere failure, nothing else appearing, to perform an agreement or

to carry out a promise[.]' " *Guy v. Guy*, 104 N.C. App. 753, 757, 411 S.E.2d 403, 405 (1991) (citation omitted). However, " 'a breach of agreement or promise may in connection with other circumstances give rise to such a trust.' " *Bank v. Insurance Co.*, 265 N.C. 86, 94-95, 143 S.E.2d 270, 276 (1965) (citation omitted). "To establish fraud the false representation must be of some material fact that is past or existing." *Ferguson v. Ferguson*, 55 N.C. App. 341, 345, 285 S.E.2d 288, 291, *disc. review denied*, 306 N.C. 383, 294 S.E.2d 207 (1982).

As defendants correctly point out, " '[c]ourts of equity will impose a constructive trust to prevent the unjust enrichment of the holder of the legal title to property acquired through a breach of duty, fraud, or other circumstances which make it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.' " *Sara Lee Corp. v. Carter*, 351 N.C. 27, 35, 519 S.E.2d 308, 313 (citation omitted), *reh'g denied*, 351 N.C. 191, 541 S.E.2d 716 (1999).

Here, because the deeds purported to transfer ownership to a "JBSS, LLC," a non-existent enterprise, they are void. This Court has clearly held that "[t]o be operative as a conveyance, a deed must designate as grantee [a living or] a legal person[]" on the date of conveyance. *Piedmont & Western Investment Corp. v. Carnes-Miller Gear Co.*, 96 N.C. App. 105, 107, 384 S.E.2d 687, 688 (1989), *disc. review denied*, 326 N.C. 49, 389 S.E.2d 93 (1990) (holding that where a deed attempted to convey property to a plaintiff corporation during that plaintiff's administrative suspension, the deed could not operate to convey title because the plaintiff had no legal existence on the date of the conveyance). *See also* James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 10-26, at 411 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999) (stating "[i]n order for a deed to be valid it must designate an existing person or legal entity as the grantee who is capable of taking title to the real property at the time of the execution of the deed"). *Id.* (footnote omitted). Therefore, before determining whether delivery of a deed (conditional or otherwise) was actually effective, we must first determine whether there is a living or legal person to whom that deed could be delivered.

No claim for declaratory judgment with regard to the ownership of these properties is contained within the pleadings. Therefore, there is no need for this Court or the trial court to address the issue of ownership of the property. Plaintiffs in their brief concede that their clients do not own the property. Although nominally "JBSS, LLC" was a party defendant, since it was never formed by the time the

complaint was filed, it is difficult to see how a remedy or judgment could be ordered against it should it later be determined to be the owner of the properties. Plaintiffs misapprehend the nature of constructive trusts with resulting trust, which is the remedy more appropriate to these facts.

Trusts created by operation of law are classified into resulting trusts and constructive trusts.

> [T]he creation of a resulting trust involves the application of the doctrine that valuable consideration rather than legal title determines the equitable title resulting from a transaction; whereas a constructive trust ordinarily arises out of the existence of fraud, actual or presumptive—usually involving the violation of a confidential or fiduciary relation—in view of which equity transfers the beneficial title to some person other than the holder of the legal title. Also, a resulting trust involves a presumption or supposition of law of an intention to create a trust; whereas a constructive trust arises independent of any actual or presumed intention of the parties and is usually imposed contrary to the actual intention of the trustee.

*Bowen v. Darden*, 241 N.C. 11, 13-14, 84 S.E.2d 289, 292 (1954).

Based upon the record evidence herein, it appears beyond factual issue that the Browders did not, as a matter of law, come into possession or control of the legal title to the five properties allegedly owned by "JBSS, LLC." Therefore, constructive trust cannot be imposed as a remedy on them. We affirm the trial court.

## C. Unfair and Deceptive Trade Practices Act ("UDTPA")

[4] "To prevail on a claim of unfair and deceptive trade practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998). It is well recognized that actions for unfair or deceptive trade practices are distinct from actions for breach of contract. *Lapierre v. Samco Dev. Corp.*, 103 N.C. App. 551, 559, 406 S.E.2d 646, 650 (1991). Our Supreme Court has also determined that, as to these elements, " 'some type of egregious or aggravating circumstances must be alleged and proved before the [Act's] provisions may [take effect]." *Business Cabling, Inc. v. Yokeley*, 182 N.C. App. 657, 663, 643 S.E.2d 63, 68 (2007) (citations omitted).

1. The Allegations are Insufficient to State a Claim Under UDTPA, Because They Do Not Constitute "Unfair or Deceptive Trade Practices"

We first consider whether defendants committed an unfair or deceptive act or practice. *See First Atl. Mgmt. Corp.*, 131 N.C. App. at 252, 507 S.E.2d at 63. A precise definition of "unfair methods of competition" as used in this section is not possible. *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 404, 248 S.E.2d 739, 746 (1978), *cert. denied*, 296 N.C. 411, 251 S.E.2d 469 (1979). In determining the unfair or deceptive nature of an act or practice, each case is fact specific, and such determination depends upon "the impact the practice has in the marketplace." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Whether an act or practice is unfair or deceptive under this section is a question of law for the court. *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 664, 370 S.E.2d 375, 389 (1988).

We have previously explained that " '[a] practice is unfair when it *offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.*' " *Business Cabling, Inc.*, 182 N.C. App. at 663, 643 S.E.2d at 68 (citation omitted). Stated another way, " 'a party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position.' " *McInerney v. Pinehurst Area Realty, Inc.*, 162 N.C. App. 285, 289, 590 S.E.2d 313, 316-17 (2004). The "relevant gauge" of an act's unfairness or deception is "[t]he effect of the actor's conduct on the marketplace." *Ken-Mar Finance v. Harvey*, 90 N.C. App. 362, 365, 368 S.E.2d 646, 648, *disc. review denied*, 323 N.C. 365, 373 S.E.2d 545 (1988).

Although commerce is intended to include all types of business activities, our case law reveals that the Act does not apply to all wrongs in a business setting. *Hageman v. Twin City Chrysler-Plymouth, Inc.*, 681 F. Supp. 303 (M.D.N.C. 1988) (Act does not apply to every dispute between parties); *compare McPhail v. Wilson*, 733 F. Supp. 1011 (W.D.N.C. 1990) (Act does not apply to claim of misrepresentation arising from allegedly fraudulent securities transaction); *Wilson v. Wilson-Cook Medical, Inc.*, 720 F. Supp. 533 (M.D.N.C. 1989) (Act does not apply to employee-employer relationship); *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 333 S.E.2d 236 (1985) (Act does not apply to securities transactions); *Wilson v. Blue Ridge Elec. Membership Corp.*, 157 N.C. App. 355, 358, 578 S.E.2d 692, 694 (2003) (Act does not apply to matters of internal corporate manage-

ment, which do not affect commerce); *Buie v. Daniel International,* 56 N.C. App. 445, 289 S.E.2d 118, *disc. review denied,* 305 N.C. 759, 292 S.E.2d 574 (1982) (Act does not apply to employer-employee relations) *with United Labs, Inc. v. Kuykendall,* 322 N.C. 643, 370 S.E.2d 375 (1988) (Act applies to covenant not to compete or to tortious interference with contracts); *Dalton v. Camp,* 138 N.C. App. 201, 531 S.E.2d 258 (2000) (Act applies to claims arising out of employee-employer relationship when employee solicited customers from employer and competed with employer while still in his employ); *Harrington Mfg. Co. v. Powell Mfg. Co.,* 38 N.C. App. 393, 248 S.E.2d 739 (1978), *cert. denied,* 296 N.C. 411, 251 S.E.2d 469 (1979) (Act applies to disputes between competitors and not only to dealings between buyers and sellers).

In the case *sub judice,* the most egregious allegation made against defendants, and the crux of plaintiffs' claims, is that defendants "marketed membership in a fictional LLC" which involved "deception, lies, and misrepresentations." Even taken as true, these facts do not constitute unfair and deceptive practices so as to violate Chapter 75. The allegations merely assert that defendants asked plaintiffs to invest in a business arrangement. These are actions which are capital raising ventures among sophisticated business entrepreneurs. Where some defendants were also investing and were equally affected by the lack of formation of the LLC, they were in no better position than plaintiffs as to the property ownership, and thus there was no inequitable assertion of defendants' power or position. *See McInerney,* 162 N.C. App. at 289, 590 S.E.2d at 316-17. Defendants' actions did not violate the first requisite element of a claim under the Act.

2. The Allegations are Insufficient to State a Claim Under UDTPA, Because They are Not "In or Affecting Commerce"

Assuming *arguendo* plaintiffs' allegations did constitute unfair and deceptive practices, plaintiffs have failed to show that the acts and statements are "in or affecting commerce." *See First Atl. Mgmt. Corp.,* 131 N.C. App. at 252, 507 S.E.2d at 63; *see also Esposito v. Talbert & Bright, Inc.,* 181 N.C. App. 742, 746, 641 S.E.2d 695, 697-98 (2007), *disc. review denied,* 362 N.C. 234, 659 S.E.2d 440 (2008) (stating that the proper inquiry as to the second element is whether a defendant's allegedly deceptive acts affected commerce and that the Act does not apply even if the defendant's statements and actions were unfair or deceptive acts or practices that injured the plaintiff, where the plaintiff did not show that the defendant's statements and

actions were "in or affecting commerce"); *HAJMM Co. v. House of Raeford Farms,* 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991) (Act does not apply to issuance or redemption of revolving fund certificates, as such activities were not "in or affecting commerce"); *J.M. Westall & Co. v. Windswept View of Asheville,* 97 N.C. App. 71, 75, 387 S.E.2d 67, 69, *disc. review denied,* 327 N.C. 139, 394 S.E.2d 175 (1990) ("[T]he proper inquiry is not whether a contractual relationship existed between the parties, but rather whether defendants' allegedly deceptive acts *affected* commerce."). Plaintiffs conclude that "[b]ecause the business transactions involved real estate, there is no controversy regarding the second element." We disagree.

This Court, on several occasions, has considered the Act's application to real estate transactions. In *Governor's Club, Inc. v. Governor's Club Ltd. P'ship,* 152 N.C. App. 240, 567 S.E.2d 781 (2002), *aff'd,* 357 N.C. 46, 577 S.E.2d 620 (2003), a golf club corporation sued the developer of the club and others alleging latent defects in and problems with the facilities. As to the unfair and deceptive trade practices claim, this Court explained that "[t]he business of buying, developing and selling real estate is an activity 'in or affecting commerce' for the purposes of G.S. § 75-1.1." *Id.* at 250, 567 S.E.2d at 788.

In *Wilder v. Squires,* 68 N.C. App. 310, 315 S.E.2d 63, *disc. review denied,* 311 N.C. 769, 321 S.E.2d 158 (1984), a potential purchaser of real estate brought suit against a vendor of real estate that was actively engaged in the real estate business and threatened the purchaser with the loss of his full binder if he would not accept financing as offered by the vendor. This Court found that the vendor committed an unfair or deceptive trade practice, because the scheme was "in or affecting commerce." *Id.* at 314-15, 315 S.E.2d at 66.

In *Stolfo v. Kernodle,* 118 N.C. App. 580, 455 S.E.2d 869 (1995), this Court considered the Act as applied to the renting of residential property. We determined that the rental of a house and a trailer space was "in or affecting commerce" for the purposes of liability pursuant to the Act. *Id.* at 581, 455 S.E.2d at 870.

Each of the above cases involved a business transaction in which there was a "provider" and a "consumer" of the product offered. *See Esposito,* 181 N.C. App. at 746, 641 S.E.2d at 698 ("Typically, claims under G.S. § 75-1.1 involve [a] buyer and seller[]"); *Cameron v. New Hanover Memorial Hospital,* 58 N.C. App. 414, 446, 293 S.E.2d 901, 919, *disc. review denied and appeal dismissed,* 307 N.C. 127, 297

S.E.2d 399 (1982) (" 'The General Assembly [in forbidding unfair and deceptive acts and practices] . . . is concerned with openness and fairness in those activities which characterize a party as a "seller.' "). *Id.* (citation omitted).

Conversely, in a case involving the private sale of a residence, this Court determined that such sale was beyond the purview of the Act. *Stephenson v. Warren*, 136 N.C. App. 768, 525 S.E.2d 809, *disc. review denied*, 351 N.C. 646, 543 S.E.2d 883 (2000). Although there was a transaction between a buyer and a seller—an exchange—the seller was not involved in the *business* of selling real estate. We held, therefore, that the transaction was not an act "in or affecting commerce."

From the above cases we determine that while real estate transactions are a type of transaction within the purview of the Act, *see Governor's Club, Inc.*, 152 N.C. App. at 250, 567 S.E.2d at 788, not all wrongs in a real estate transaction are summarily "in or affecting commerce," as plaintiffs contend. Such business dealings were solely between plaintiffs and defendants in their limited business relationship. Any "marketing" of membership in order to raise capital for purchasing real estate was handled either directly between defendants and plaintiffs or involved Felix Carcano as an intermediary and had no impact on consumers or the marketplace. *See Business Cabling, Inc.*, 182 N.C. App. at 663, 643 S.E.2d at 68; *Ken-Mar Finance*, 90 N.C. App. at 365, 368 S.E.2d at 648; *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403. Plaintiffs failed to show that defendants' actions had any effect on commerce, and their allegations as to the second element of the Act also fail. *See Wilson*, 157 N.C. App. at 358, 578 S.E.2d at 694.

3. The Allegations of Damages Are Sufficient to State a Claim Under UDTPA Because Plaintiffs Have Not Alleged an Actual, Concrete Injury in Fact

Finally, we consider whether plaintiffs have alleged an actual, concrete injury in fact that was caused by defendants. *See First Atl. Mgmt. Corp.*, 131 N.C. App. at 252, 507 S.E.2d at 63. To have standing to bring a claim under the Act, the plaintiff must prove the elements of standing, including "injury in fact." *See Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 391, 617 S.E.2d 306, 310 (2005), *aff'd*, 360 N.C. 398, 627 S.E.2d 461 (2006). An injury in fact must be " 'distinct and palpable,' " and must not be " 'abstract or conjectural or hypothetical.' " *Id.* (citation omitted). We agree that the plaintiffs' allegations of monetary damages are sufficiently palpable to meet the showing required of an actual, concrete injury.

Plaintiffs' allegations fail to state a claim under the North Carolina UDTPA, because under any statement of facts which could be proven, the events that allegedly occurred and defendants' alleged statements and actions do not rise to the level of unfair and deceptive trade practices. The allegations do not affect "commerce" outside the dealings of the parties' limited business relationship. *Wilson*, 157 N.C. App. at 358, 578 S.E.2d at 694. For these reasons, the trial court properly granted summary judgment to defendants as to plaintiffs' claim for unfair and deceptive practices under N.C. Gen. Stat. § 75-1.1.

### D. Fraud

**[5]** Fraud includes two categories, actual and constructive. *Forbis v. Neal*, 361 N.C. 519, 526, 649 S.E.2d 382, 387 (2007). Both will be discussed as they apply to the record in this sequence. The critical factor in the application of either of these theories lies in the characterization of the facts which plaintiffs claim and defendants deny are misrepresented. In this record, the critical factor alleged to have been misrepresented is the legal existence of a limited liability company in November 2005.

The evidence is uncontradicted that the Browders, outside of the relationship with plaintiffs, believed that "JBSS, LLC" was properly formed. Two properties which were to be contributed to this enterprise by Lucy Browder were not titled in her name but in "JBSS, LLC." Deposition testimony by David Browder explains his "mistaken" belief in the existence of "JBSS, LLC." There would have been no advantage for the Browders to title properties to a non-existent entity voiding a conveyance for which some consideration on behalf of the Browders would have been forthcoming. Competent evidence exists as to the existence of a mistake on the part of the Browders. Plaintiffs' relying on the representations of the Browders were likewise mistaken. We do not believe this evidence supports the plaintiffs' claims as to fraud, constructive fraud or breach of fiduciary duty.

1. Actual Fraud

To prove actual fraud, a plaintiff must be damaged by the fraud of the defendant. The plaintiff has the burden of showing six things: First, the defendant must made a false representation of a material fact. The alternative proof a plaintiff may provide is based on concealment of a material fact which does not apply to these facts, since an actual representation was made. A fact is material, if had it been known to the party, it would have influenced that party's decision in

making the contract at all. *Godfrey v. Res-Care, Inc.* 165 N.C. App. 68, 75, 598 S.E.2d 396, 402, *disc. review denied*, 359 N.C. 67, 604 S.E.2d 310 (2004). It is clear that the legal existence of the "JBSS, LLC," qualifies as a "material fact," and it was misrepresented to plaintiffs by David Browder. There is, however, no proof that it was misrepresented to plaintiffs by any of the other defendants. Plaintiffs have therefore forecast sufficient evidence to meet this element.

Secondly, under these facts plaintiffs must show that the misrepresented material fact was known to be false or makes it recklessly, without any knowledge of its truth or falsity, as a positive assertion. *Tarlton v. Keith*, 250 N.C. 298, 304, 108 S.E.2d 621, 624-25 (1959); *Atkinson v. Charlotte Builders*, 232 N.C. 67, 68, 59 S.E.2d 1, 1-2 (1950). However, there is no competent evidence in the record that the false representation was reasonably calculated to deceive or was made with intent to deceive. This Court has explained that the scienter required for fraud "is not present without both knowledge and an intent to deceive, manipulate, or defraud." *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 745, 600 S.E.2d 492, 498 (2004).

The basis of plaintiffs' claims is that "JBSS, LLC," was not legally formed prior to the real estate lots purchased. Browder testified that he discovered that the LLC had not been formed only after all five properties had been purchased. He explained that he relied on information provided by an employee of the law firm that was to form the LLC who reported to Browder that the "LLC had been formed." Browder testified that he assumed that the employee meant "JBSS, LLC"; however, this employee was actually referring to Premier Motorcar, LLC, a company that Browder had formed earlier for another business venture.

Plaintiffs have failed to show a forecast of evidence that Browder had any knowledge of the falsity of his representation as to the formation of the LLC; thus, he did not have the requisite scienter for fraud, and he had no "intent to deceive, manipulate, or defraud." *See RD&J Props.*, 165 N.C. App. at 745, 600 S.E.2d at 498. The proof in this case shows an innocent, or at most a negligent, misrepresentation at best. The trial court was justified in dismissing the claims.

## 2. Constructive Fraud/Breach of Fiduciary Duty

Plaintiffs' claims for damages for constructive fraud/breach of fiduciary duty likewise fail. To defeat a motion for summary judgment

when a claim for constructive fraud is made, a plaintiff must show evidence of a " 'relation of trust and confidence . . . [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.' " *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (citation omitted). The basis of a claim for constructive fraud is the existence of a confidential or fiduciary relationship. *Id.*

A fiduciary relationship exists " 'in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.' " *HAJMM Co.*, 328 N.C. at 588, 403 S.E.2d at 489 (citations omitted). Whether such a relationship exists is generally a question of fact for the jury. *Stamm v. Salomon*, 144 N.C. App. 672, 680, 551 S.E.2d 152, 158 (2001), *disc. review denied, appeal dismissed*, 355 N.C. 216, 560 S.E.2d 139 (2002). As a matter of law, however, business partners are fiduciaries to one another. *HAJMM Co.*, 328 N.C. at 588, 403 S.E.2d at 489. In our analysis, we agree with plaintiffs that whatever the undefined business relationship was between the parties, it created a fiduciary relationship, primarily because it is undisputed that Carcano deposited funds with David Browder for the purchase of real estate, which would clearly support a finding that plaintiffs placed special confidence in David Browder.

However, constructive fraud requires more than a fiduciary relationship. In *Barger*, 346 N.C. at 666, 488 S.E.2d at 224, the Supreme Court wrote that "[i]mplicit in the requirement that a defendant '[take] advantage of his position of trust to the hurt of plaintiff' is the notion that the defendant must seek his own advantage in the transaction[.]" The Court then stated that "[t]he *requirement* of a benefit to defendants follows logically from the requirement that a defendant harm a plaintiff by taking advantage of their relationship of trust and confidence." *Id.* at 667, 488 S.E.2d at 224 (emphasis added).

In the instant case, plaintiffs could not show specific facts creating a triable issue that defendants participated in a transaction through which they sought to benefit themselves. Defendants have no greater legal interest in the properties than do plaintiffs. Neither party has any legal interest in these properties as the record title shows. The fact is that the business invested in properties that benefitted neither party. The trial court correctly granted summary judgment as to plaintiffs' constructive fraud claim.

### E. Unjust Enrichment

[6] Plaintiffs' allegations fail to state a claim for unjust enrichment. Unjust enrichment has been defined as follows:

"Unjust enrichment" is a legal term characterizing

the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor.

*Ivey v. Williams*, 74 N.C. App. 532, 534, 328 S.E.2d 837, 838-39 (1985) (citing Am. Jur. 2d *Restitution and Implied Contracts* Sec. 3, at 945 (1973)). To be successful in a claim for unjust enrichment, a plaintiff must show: " '(1) services were rendered to [the] defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously.' " *Horack v. Southern Real Estate Co.*, 150 N.C. App. 305, 314, 563 S.E.2d 47, 54 (2002).

Plaintiffs argue that defendants have been unjustly enriched because plaintiffs contributed money towards the purchase of real estate, and defendants "personally exercised dominion over [plaintiffs'] funds instead of using them as agreed." The crux of this argument is that defendants exercised such dominion by purchasing 215 Quail Ridge, 12 Roundabout, and 3 Apple Valley "in their own names"; thus, plaintiffs do not hold legal title to the properties. As defendants note, however, both plaintiffs and defendants were buying property through the same business entity and thus "stand in the same legal position with respect to the properties."

As to the ownership of the property, when asked about the property being in "Lucy's name and not the LLC," Carcano stated: "No, you have it backwards. The properties are in the JBSS, LLC name." This statement, in conjunction with his claim of at least 33% ownership rights, indicates defendants were in no better legal position than plaintiffs, and defendants have not been unjustly enriched. The trial court correctly granted summary judgment to defendants on the issue of unjust enrichment.

### F. Punitive Damages

[7] The award of punitive damages is governed by N.C. Gen. Stat. § 1D-15 (2007), "**Standards for recovery of punitive damages,**" and is limited to cases involving fraud, malice or willful or wanton conduct. *Id.* "Punitive damages shall not be awarded against a

IN RE SEARCH WARRANTS OF COOPER

[200 N.C. App. 180 (2009)]

person solely for breach of contract." N.C. Gen. Stat. § 1D-15(d) (2007). Because we have affirmed the trial court that the sole remaining issue for trial is breach of contract, the trial court dismissed the punitive damages claim pursuant to N.C. Gen. Stat. § 1D-15. We agree.

V. Conclusion

Based upon the foregoing discussion, we affirm the trial court order dismissing all of plaintiffs' claims, except the breach of contract claim, and remand the case to the trial court.

Affirmed in part and remanded.

Judges WYNN and JACKSON concur.