**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 24-1893**

───────────────

MOUNTAIN ISLAND DAY COMMUNITY CHARTER SCHOOL, d/b/a Jackson Day School; MARINER FOUNDATION,

Plaintiff – Appellants,

v.

INSPIRE PERFORMING ARTS COMPANY, LLC; MEGAN ZUGELDER MAY; LISA LEWIS,

Defendant – Appellees.

───────────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Kenneth D. Bell, District Judge.  (3:24-cv-00779-KDB-DCK)

───────────────

Argued:  March 18, 2025                    Decided:  September 2, 2025

───────────────

Before DIAZ, Chief Judge, and WYNN and BENJAMIN, Circuit Judges.

───────────────

Affirmed by unpublished opinion.  Judge Benjamin wrote the opinion, in which Chief Judge Diaz and Judge Wynn joined.

───────────────

**ARGUED:** Jonathan Vogel, VOGEL LAW FIRM PLLC, Charlotte, North Carolina, for Appellants.  Patricia Wilson Magee, SHUMAKER, LOOP & KENDRICK, PLLC, Charlotte, North Carolina, for Appellees.  **ON BRIEF:** David Stevenson Walker, II, WALKER KIGER, PLLC, Garner, North Carolina, for Appellants.  Samuel Alexander Long, Jr., Christina Davidson Trimmer, SHUMAKER, LOOP & KENDRICK, LLP,

Charlotte, North Carolina, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

DEANDREA GIST BENJAMIN, Circuit Judge:

A charter school and its parent-teacher association appeal the denial of their preliminary injunction motion against a local dance company and its founders. Because the district court did not abuse its discretion in determining that the movants failed to show a likelihood of success on the merits of their claims, we affirm.

I.

Jackson Day School ("JDS") is a K-12 charter school located in Charlotte, North Carolina. Megan May and Lisa Lewis are former JDS employees and founders of Inspire Performing Arts Company, LLC, a local dance company (collectively, "IPA Co."). JDS and its parent-teacher association, Mariner Foundation (collectively, "the School"), sued IPA Co. for alleged damages resulting from its advertising practices and use of JDS' trademark. The relevant facts are stated below.[1]

A.

1. Inspire Dance Team at Charlotte-Mecklenburg Schools

In April 2016, May and Lewis formed an afterschool dance team while working as teachers at Winding Springs Elementary School ("Winding Springs")—a public school in the Charlotte-Mecklenburg Schools ("CMS"). They referred to this team as the "Inspire Dance Company" or the "Inspire Dance Team" (collectively, "Inspire Dance Team") and

---

[1] "The following facts are based on the record as it comes to us on this preliminary, interlocutory appeal." *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 213 (4th Cir. 2025).

competed in several dance competitions under these names from 2016 to 2018. The team practiced at Winding Springs and primarily consisted of former Winding Springs students who returned to the school for the program. Team members wore jackets and t-shirts with logos including the "Inspire" name on it (hereinafter "the INSPIRE mark").

Simultaneously, May and Lewis coached and managed "The Winding Springs Elementary Dance Team." This dance team consisted of students at Winding Springs and also practiced at the school. The team wore apparel with different logos than the Inspire Dance Team, and had different practice schedules as well.

## 2. Inspire Dance Team at JDS

In 2018, May and Lewis left Winding Springs and began teaching dance at JDS. The Inspire Dance Team rehearsed after school at JDS and was directed by May and Lewis. The team continued to wear jackets, t-shirts, and backpacks featuring the same logo the team had used since its founding in 2016.

May and Lewis were paid stipends for directing the Inspire Dance Team. Yet May's employment contract does not reference her serving as a director for any JDS dance team.

In October 2023, while still employed at JDS, May formed a limited liability company, Inspire Performing Arts Company, LLC.[2] In June 2024, May sent a letter to parents whose children were involved with the Inspire Dance Team informing them that

---

[2] Inspire Performing Arts Company, LLC is one of the named defendants in this case, as the School believes that May and Lewis have used the company to carry out their trademark infringement, false advertising, and unfair and deceptive trade practices with respect to the Inspire Dance Team and the INSPIRE mark.

the team would be moving from JDS to a new space.  That same month, May and Lewis departed JDS.

### 3. Inspire Dance Team After May Leaves JDS

After departing JDS, May and Lewis continued advertising the Inspire Dance Team using photos and videos of the team, which included pictures containing the INSPIRE mark.  In July 2024, however, May and Lewis learned that JDS filed applications with the United States Patent and Trademark Office attempting to register trademarks for "INSPIRE DANCE COMPANY" and "INSPIRE DANCE TEAM."  May and Lewis responded by filing their own registration application for the "INSPIRE" mark.

### B.

The School filed suit, raising federal claims under § 43(a)(1) of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A)–(B) (trademark infringement and unfair competition, and false advertising), and various state law claims, including one under the North Carolina Unfair and Deceptive Trade Practice Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1(a).[3]  The School filed a motion for a temporary restraining order and preliminary injunction pursuant to its Lanham Act and UDTPA claims to prohibit IPA Co.'s use of the INSPIRE mark or any other similar designation.[4]  The district court denied the School's motion for a temporary

---

[3] The School also brought claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and unjust enrichment.

[4] In the same motion, the School also argued that the district court could grant preliminary injunctive relief based on its state-law claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  But the School does not challenge the district court's order denying preliminary injunctive relief as to these claims, so we (Continued)

5

restraining order without prejudice, and denied the School's motion for a preliminary injunction after a motion hearing.

## II.

IPA Co. contends that the School's notice of appeal is jurisdictionally defective because it references the district court's oral order denying the School's motion but was filed before the court docketed any ruling. IPA Co. argues that the notice does not provide adequate information under Federal Rule of Appellate Procedure 3(c)(1)(B). The School argues that, under Federal Rule of Appellate Procedure 4(a)(2), its premature notice of appeal relates forward to the date the district court entered its written order, thereby conferring jurisdiction on this court.

Given the "leniency" with which we enforce Rule 3's notice of appeal requirements, and the "flexibility" we have in determining "when to apply Rule 3's jurisdictional bar," we find that the School's notice of appeal was not jurisdictionally defective. *See Wall Guy, Inc. v. Fed. Deposit Ins. Corp.*, 95 F.4th 862, 867 (4th Cir. 2024). We think it clear that the School appealed from the district court's denial of the preliminary injunction motion. Particularly, we are persuaded by the fact that applying a jurisdictional bar here would conflict with Rule 4(a)(2), which expressly allows for notices of appeal to be filed before the entry of the order or judgment appealed from. *See* Fed. R. App. P. 4(a)(2) ("A notice

---

conclude that the arguments have been forfeited for the purposes of this interlocutory appeal. *See Z.W. ex rel. Warner v. Horry Cnty. Sch. Dist.*, 68 F.4th 915, 919 (4th Cir. 2023) (explaining that a party forfeits issues not raised on appeal).

of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry."); *see also FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*, 498 U.S. 269, 275 (1991); *Gelin v. Baltimore County*, 122 F.4th 531, 536 (4th Cir. 2024). We therefore exercise jurisdiction over the School's appeal pursuant to 28 U.S.C. § 1292(a)(1).

## III.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," and may never be awarded "as of right." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008) (citation omitted). Plaintiffs seeking to obtain a preliminary injunction must demonstrate that (1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent an injunction; (3) the balance of equities weighs in their favor; and (4) the injunction is in the public interest. *Id.* at 20. "Although [p]laintiffs 'need not establish a certainty of success,' they must 'make a clear showing that [they are] likely to succeed at trial.' " *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020) (internal quotation marks omitted) (quoting *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017)). "Denying a preliminary injunction only takes the rejection of a single factor." *N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 497 (4th Cir. 2025) (quoting *Frazier v. Prince George's County*, 86 F.4th 537, 544 (4th Cir. 2023)) (cleaned up).

We review the denial of a motion for a preliminary injunction for an abuse of discretion. *See Real Time Med. Sys., Inc v. PointClickCare Techs., Inc.*, 131 F.4th 205,

7

224 (4th Cir. 2025). We therefore "may not reverse so long as the district court's account of the evidence is plausible in light of the record viewed in its entirety." *Id.* (quoting *Roe*, 947 F.3d at 219). Only "[a] clear error in factual findings or a mistake of law [are] grounds for reversal." *Id.* (quoting *Roe*, 947 F.3d at 219).

### A.

The School argues that the district court abused its discretion in denying its motion for a preliminary injunction on its trademark infringement and false advertising claims under the Lanham Act, and its North Carolina UDTPA claim. We review each of these claims in turn.

### 1.

"An infringement claim may concern either a registered trademark, or an unregistered trademark." *See Moke Am. LLC v. Moke Int'l Ltd.*, 126 F.4th 263, 272 (4th Cir. 2025) (first citing 15 U.S.C. § 1114(1); and then citing 15 U.S.C. § 1125(a)). Where, as here, "a district court action concerns ownership of an unregistered trademark, any party claiming ownership bears the burden of proving that it owns a valid and protectable mark." *Id.* (citing *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 268–69 (4th Cir. 2003)). "A claim that an unregistered trademark has been infringed requires the plaintiff to show that it owns a valid and protectable mark, plus that the alleged infringer's use of the mark creates a likelihood of consumer confusion." *Id.* (citing *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 660 (4th Cir. 2018)).

"[O]wnership is acquired at common law 'by actual use of the mark in a given market.' " *Id.* at 270 (quoting *Emergency One*, 332 F.3d at 267). It is "premised on priority

of use, such that 'the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.' " *Id.* at 270–71 (quoting *Emergency One*, 332 F.3d at 267). "The party claiming ownership must also use the mark as a trademark, i.e., the mark must be used to identify the source of the goods to potential customers." *Id.* at 271 (internal quotation marks omitted) (quoting *George & Co. v. Imagination Ent. Ltd.*, 575 F.3d 383, 400 (4th Cir. 2009)). "Thus, so long as a person is the first to use a particular mark to identify his goods in a given market, and so long as that owner continues to make use of the mark, he is entitled to prevent others from using the mark to describe their own goods in that market." *Id.* (internal quotation marks omitted) (quoting *George & Co.*, 575 F.3d at 400).

That said, "[t]he priority to use a mark . . . can be lost through abandonment." *Id.* (alterations in original) (quoting *Emergency One*, 332 F.3d at 268). This occurs "when a common law trademark owner has ceased use of 'the mark without an intent to resume use in the reasonably foreseeable future[.]' " *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 115 F.4th 266, 284 (4th Cir. 2024) (quoting *George & Co.*, 575 F.3d at 400). "Once abandoned, a mark may be seized immediately and the person doing so may establish priority of use and ownership under the basic rules of trademark priority." *Moke*, 126 F.4th at 271 (internal quotation marks omitted) (quoting *Emergency One*, 332 F.3d at 268).

Relevant here, the employment status of a mark's author can impact ownership of the mark. "If an employee designs a mark in the course of employment and the employer uses it, . . . the employer is the 'owner' of the mark." 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:36 (5th ed. May 2025 Update). But if a

9

person owns a mark "and then enter[s] into employment under an agreement to assign to the employer all marks developed as an employee, the employee, not the employer, is the owner of the pre-employment mark." *Id.*; *see Moke*, 126 F.4th at 270–71 ("the party claiming ownership must have been the first to actually use the mark in the sale of goods or services" (citation omitted)).

The School contends that May and Lewis created the INSPIRE mark within the scope of their employment with CMS, making CMS the original owner. It asserts that when May and Lewis departed Winding Springs, CMS stopped using the mark, leading to its abandonment. It claims that when May and Lewis joined JDS, JDS gained trademark rights to the INSPIRE mark through using the mark to promote its own dance team. The School argues, therefore, that May and Lewis' continued use of the mark after leaving JDS infringes on JDS' trademark.

IPA Co. argues that the School offered no evidence of CMS' ownership or use of the INSPIRE mark, and merely speculates about the scope of May and Lewis' employment with CMS. It asserts that the School's cited evidence pertains to a different dance team— the Winding Springs Elementary Dance Team—that never used the INSPIRE mark. It argues that the Inspire Dance Team had jackets, logos, calendars, and members distinct from the Winding Springs Elementary Dance Team, which supports the district court's conclusion that the School failed to prove ownership of the INSPIRE mark.

We agree with IPA Co. The record supports the district court's conclusion that "factual disputes . . . preclude the extraordinary relief of a preliminary injunction" with

regard to the School's trademark infringement claim.  *See* J.A. 510.[5]  Evidence in the record indicates that while the Inspire Dance Team practiced at Winding Springs, Winding Springs had its own school dance team.  Record evidence further suggests that the teams were made up of different students, wore different jackets with different logos to denote their affiliation, and had separate practice schedules.

The School also failed to provide evidence of the scope of May and Lewis' employment at Winding Springs or their agreements with CMS, undermining its claim that CMS owned the INSPIRE mark or the Inspire Dance Team via May and Lewis' employment at Winding Springs.  And the fact that the INSPIRE mark and the Inspire Dance Team followed May and Lewis when they left Winding Springs casts additional doubt on the School's position.

The School's theory of trademark ownership and transfer falters at the gate, so we do not reach its arguments that CMS abandoned the INSPIRE mark or that JDS acquired the mark through ordinary priority rules.  We find no abuse of discretion in the district court's refusal to grant preliminary injunctive relief.  *See Real Time Med. Sys., Inc*, 131 F.4th at 223.

2.

To establish false advertising under § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a plaintiff must establish:

---

[5] Citations to "J.A." refer to the joint appendix filed by the parties.  The J.A. contains the record on appeal from the district court.  Page numbers refer to the "J.A. #" pagination.

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002) (collecting cases). As to the first prong of the analysis, the "contested statement [must] . . . be a representation of fact." *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015). The statement must also be either (1) false on its face, or (2) true, but "likely to mislead and confuse consumers given the merchandising context." *See id.* (quoting *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011)).

The School claims that IPA Co. committed false advertising by featuring images, videos, and parent testimonials on its website consisting of JDS students next to the INSPIRE mark, thereby leading consumers to erroneously associate the School with IPA Co.'s dance team. Any falsity in IPA Co.'s communications therefore turns on the School having an interest in "INSPIRE." IPA Co. argues that the district court properly rejected the School's false advertising claim because the School has not demonstrated that it owns the INSPIRE mark depicted in the images, videos, and parent testimonials at issue.

We agree with IPA Co. The district court did not abuse its discretion in concluding that factual disputes regarding ownership of the INSPIRE mark preclude preliminary relief on the School's false advertising claim. *See* J.A. 511. May's declaration and evidence

12

from the district court's hearing suggest that May and Lewis formed the Inspire Dance Team while employed at Winding Springs and brought the team with them when they started working at JDS. While at JDS, the Inspire Dance Team continued to wear jackets, t-shirts, and backpacks featuring the same logo the team had used since its founding in 2016. Further, May's employment contract makes no mention of her serving as a director of a JDS dance team, cutting against the notion that she was hired by JDS to run the Inspire Dance Team. We therefore find no abuse of discretion in the district court's conclusion.[6] *See Real Time Med. Sys., Inc*, 131 F.4th at 224.

3.

To make a claim under the UDTPA, a plaintiff must establish: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury" to the claimant. *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000) (first citing N.C. Gen. Stat. § 75-1.1(a); and then citing *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 507 S.E.2d 56, 63 (N.C. Ct. App. 1998)). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker v. Fleetwood Homes of N. Carolina, Inc.*, 653 S.E.2d 393, 399 (N.C. 2007) (quoting *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)). But "the Act does not apply to all wrongs in a business

---

[6] The School also argues that IPA Co. forfeited any argument regarding false advertising by failing to raise the issue below. But both below and in this court, IPA Co. challenged the School's claims on the basis that IPA Co. owns the rights to the INSPIRE mark and its corresponding dance team. We therefore consider those arguments on appeal.

13

setting." *See Carcano v. JBSS, LLC*, 684 S.E.2d 41, 50 (N.C. App. 2009) (collecting cases). Rather, plaintiffs must allege "some type of egregious or aggravating circumstances . . . before the [Act's] provisions may [take effect]." *Id.* at 50 (quoting *Business Cabling, Inc. v. Yokeley,* 643 S.E.2d 63, 68 (N.C. 2007)). Here, the School must make a clear showing of circumstances "aggravating or egregious enough to overcome the longstanding presumption against unfair and deceptive practices claims as between employers and employees." *Dalton v. Camp*, 548 S.E.2d 704, 710, 712 (N.C. 2001) (holding that a former manager's formation of competing business and solicitation of employer's client without notice was not sufficiently egregious for UDPTA claim).

The School argues that IPA Co. made an unfair and deceptive announcement by falsely claiming in a customer solicitation letter that the Inspire Dance Team had a temporary home at JDS after previously being housed at Winding Springs. IPA Co. responds that the statement is truthful. The district court concluded that the School's contentions do not amount to the aggravating or egregious circumstances required to invoke the protections of the UDTPA.[7]  J.A. 511.

We agree with the district court. Even if the School proved that IPA Co.'s customer solicitation letter was unfair and deceptive, this alone does not establish the aggravating or

---

[7] The School contends that IPA Co. waived any argument concerning the absence of aggravating or egregious circumstances necessary to substantiate a UDTPA claim. Again, we disagree. IPA Co.'s assertion that its customer solicitation letters were not false—the sole basis for the School's claim—effectively challenges the presence of such circumstances, preserving the argument. *See De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531–32 (4th Cir. 2022).

14

egregious circumstances required to support a valid UDTPA claim.  IPA Co.'s customer solicitation letters are mere "business related conduct."  *Dalton*, 548 S.E.2d at 712; *Carcano*, 684 S.E.2d at 50 (collecting cases).  "[W]ithout more" these letters do not present circumstances "aggravating or egregious enough to overcome the longstanding presumption against unfair and deceptive practices claims as between employers and employees."  *Dalton*, 548 S.E.2d at 712.  Here again, the district court did not abuse its discretion in refusing to grant preliminary injunctive relief.

## IV.

After reviewing the record, we find that the district court did not abuse its discretion in denying the preliminary injunction.  And because the School was required to satisfy each prong of the preliminary injunction analysis to prevail, its failure to demonstrate a likelihood of success on the merits obviates the need to consider the remaining ones.  *See N. Va. Hemp & Agric.*, 125 F.4th at 497.  Accordingly, we affirm.

*AFFIRMED*