Vizant Techs., LLC v. YRC Worldwide Inc., 2019 NCBC 15.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

VIZANT TECHNOLOGIES, LLC,

Plaintiff,

v.

YRC WORLDWIDE INC.,

Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 20654

**ORDER AND OPINION ON
PLAINTIFF'S MOTION TO STAY
PROCEEDINGS PENDING APPEAL**

1.     **THIS MATTER** is before the Court upon Plaintiff Vizant Technologies, LLC's ("Vizant") Motion to Stay Proceedings Pending Appeal (the "Motion") in the above-captioned case.

2.     Pursuant to N.C. Gen. Stat. § 1-294 and North Carolina Rule of Appellate Procedure ("Appellate Rule") 8(a), Vizant moves for a stay of proceedings before this Court pending appeal.  After considering the parties' briefs in support of and in opposition to Vizant's Motion, the arguments of counsel at the February 13, 2019 hearing on the Motion, and other appropriate matters of record, the Court concludes that the Motion should be **GRANTED in part** and **DENIED in part** for the reasons stated herein.

> *Lincoln Derr PLLC, by Sara R. Lincoln, for Plaintiff Vizant Technologies, LLC.*
>
> *Strauch Green & Mistretta, P.C., by Jack M. Strauch and Jessie Charles Fontenot, for Defendant YRC Worldwide Inc.*

Bledsoe, Chief Judge.

I.

BACKGROUND

3.     The dispute between Vizant and Defendant YRC Worldwide Inc. ("YRC") arises from alleged breaches of a Professional Services Agreement ("PSA") entered into by the parties, the specifics of which have been discussed by the Court in opinions reported at *Vizant Technologies, LLC v. YRC Worldwide Inc.*, 2018 NCBC LEXIS 155 (N.C. Super. Ct. Nov. 15, 2018), and *Vizant Technologies, LLC v. YRC Worldwide Inc.*, 2018 NCBC LEXIS 65 (N.C. Super. Ct. June 26, 2018).  Vizant's claims arise, in part, from YRC's nonpayment of fees allegedly owed under the PSA.  *See Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *9.

4.     According to the PSA's terms, Vizant was to consult with YRC and recommend ways to lower payment processing costs that YRC experiences in its business as a national and international freight carrier.  *Id.* at *2–7.  Part of this consultation required Vizant to generate an initial written report on its recommendations.  *Id.* at *2.  YRC would pay Vizant fees based upon a percentage of the "Financial Payment Cost Reductions" YRC realized.  *Id.* at *11.  Those "Financial Payment Cost Reductions" were calculated by comparing "Pre-Agreement Financial Payment Costs" to "Post-Agreement Financial Payment Costs"—terms defined in the PSA.  *Id.* at 11–12.  "Pre-Agreement Financial Payment Costs" were the costs YRC incurred before entering the PSA.  *Id.* at *12.  "Post-Agreement Financial Payment Costs" were defined as the financial payment costs YRC incurred "as a result of the

strategies and solutions that [were] identified and recommended by Vizant in performance of its professional services[.]" *Id.*

5.     Vizant contends that YRC implemented and achieved savings resulting from two recommendations included in Vizant's report—(i) charge YRC's clients an account management fee for credit card transactions and (ii) convince YRC's clients to switch from credit card payments to Automated Clearing House ("ACH") payments (the "ACH Recommendation"). *Id.* at \*23. Vizant further contends that YRC did not pay Vizant fees based on those savings. *Id.* at \*9, \*23.

6.     In response, YRC asserts that it never reviewed Vizant's written report and could not have knowingly implemented the strategies contained therein.[1] *Id.* at \*19. YRC also contends that it was already implementing or had considered implementing cost-reduction strategies similar to the account management fee and ACH recommendations in Vizant's report and that YRC's management informed Vizant of this prior to the execution of the PSA. *Id.* at \*4.

7.     On January 19, 2018, Vizant and YRC filed cross-motions for summary judgment. During briefing and at the hearing on the motions, both sides disputed the conditions under which the PSA required YRC to pay Vizant a fee. These arguments focused on whether the PSA required YRC to pay Vizant for cost "reductions . . . even if YRC previously considered implementing the identified" strategies or implemented the identified strategies independently of the suggestions

---

[1] One YRC employee reviewed an electronic copy of Vizant's report in early 2017 pursuant to an order from the Court for the purposes of assisting the parties with discovery. YRC contends that this is the only instance in which any person associated with YRC has viewed Vizant's report.

in Vizant's report (as Vizant argues the contract should be read) or whether YRC was only obligated to pay a fee "if Vizant's suggestions actually caused YRC to change business practices and realize savings" (as YRC contends). *Id.* at *9–10. In essence, YRC argued that it had to pay Vizant only if Vizant came up with and caused YRC to implement new strategies and that YRC did not owe Vizant for savings realized through strategies YRC was already considering or decided to implement of its own volition having never reviewed Vizant's report. *See id.* at *9. Vizant argued that the PSA contained no such nuance and simply required a payment if YRC implemented one or more of the strategies appearing in Vizant's report and realized savings. *See id.* at *10.

8. In an order and opinion entered June 26, 2018 (the "First Summary Judgment Order"), the Court examined whether Vizant's entitlement to a fee under the PSA turned upon which party caused the relevant cost-saving strategies to be implemented. In doing so, the Court looked to section 6 of the PSA, which defined "Post-Agreement Financial Payment Costs" as "Financial Payment Costs that [YRC] incurs on a monthly basis, as a result of the strategies and solutions that have been identified and recommended by Vizant[.]" (Pl.'s Mem. L. Supp. Mot. Summ. J. Ex. 2 § 6 [hereinafter "PSA"], ECF No. 84.3.)

9. The Court concluded that the answer to this specific dispute largely turned on the meaning of the term "Post-Agreement Financial Payment Costs" and that the definition of that term was in turn dependent upon the meaning of the word "identified." *Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *12–13. The Court noted

that "identify" could mean "specify," "recognize," or "name"—definitions supporting Vizant's position—or "establish the . . . separate or distinct existence of"—a definition supporting YRC's argument. *Id.* at \*13–14. Because both definitions of "identify" were reasonable, and the meaning of "identify" was thus ambiguous, the Court concluded that the definition of "Post-Agreement Financial Payment Costs" was ambiguous. *Id.* The Court further concluded that the extrinsic evidence presented by the parties did not allow the Court to resolve this ambiguity as a matter of law. *Id.* at \*17–18. Thus, the Court held that whether Vizant was entitled to a fee under the PSA was an issue for the jury at trial. *Id.* at \*22.

10. The First Summary Judgment Order also addressed a motion by YRC to exclude certain opinions and calculations offered by Vizant's damages expert, Scott Emmanuel ("Emmanuel"). The challenged opinions concerned the amount in fees YRC owed Vizant under the PSA should a jury determine that Vizant was entitled to a fee under the PSA's terms. *Id.* at \*22–23. YRC forecast that Emmanuel would offer opinions on (i) Vizant's damages linked to outstanding fees owed for Vizant's "account management fee" recommendation and (ii) Vizant's damages connected with outstanding fees for Vizant's ACH Recommendation (the "ACH Damages"). *Id.* at \*23. YRC's motion challenged Emmanuel's opinion or opinions on this second category of damages, contending that Emmanuel's ACH Damages calculation was speculative and unreliable under North Carolina Rule of Evidence 702. *Id.* at \*23–25.

11. The Court agreed with YRC. In so ruling, the Court stated that the PSA did not define "Post-Agreement Financial Payment Costs" as "broad, kitchen-sink savings realized after the execution of the PSA." *Id.* at *26. Instead, the agreement "expressly defined" the savings Vizant's fee would be based on as "those savings that specifically resulted from the strategies and solutions identified by Vizant." *Id.* This definition did not square with Emmanuel's method of calculating damages.

12. In calculating Vizant's ACH Damages, Emmanuel "assumed every single dollar of [post-PSA cost reductions] was due solely and completely to YRC having convinced customers to pay by ACH" and took no steps to account for other factors that may have led to a reduction in customers paying with credit cards, e.g., lost business. *Id.* at *29 (internal quotation marks omitted). This fact was demonstrated most clearly by the following exchange at Emmanuel's deposition:

> Q: And you don't know whether that reduction was caused by YRC implementing some recommendation that Vizant put in its report, right?
>
> A: Correct.
>
> Q: All you know is that your math tells you that there was some reduction, and who in the world knows why it happened, right?
>
> A: Correct.

(Emmanuel Dep. 137:4–11, ECF No. 90.10.) Because Emmanuel's calculation of ACH Damages did not consider or account for alternative causes of YRC's cost reductions, contained analytical gaps, and did not make an effort to follow the PSA's formula for calculating fees, the Court concluded that the ACH Damages calculation was unreliable. *Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *30. The Court ruled that

Emmanuel would not be permitted to offer testimony or opinions relating to his ACH Damages calculation at trial and that no expert witness would be permitted to give testimony that was dependent upon Emmanuel's ACH Damages calculation. *Id.* at *31.

13. Following the First Summary Judgment Order, YRC filed a motion for reconsideration under Rule 54(b) of the North Carolina Rules of Civil Procedure. YRC pointed out that the Court, in ruling on the parties' summary judgment motions, had not considered or addressed a request by YRC for summary judgment on the sufficiency of Vizant's evidence supporting its alleged ACH Damages. Both sides submitted briefing on the motion for reconsideration and were given the opportunity to argue their positions at an August 30, 2018 hearing on the matter.

14. After taking the matter under advisement, the Court concluded that it was "clear that the issue of summary judgment as to Vizant's ACH Damages was properly raised and before the Court" at summary judgment, though the issue had received little attention from either party. (Order Def.'s Mot. Recons. ¶ 9, ECF No. 205.) The Court further concluded that it had "not address[ed] the sufficiency of Vizant's evidence as to the ACH Damages portion of Vizant's breach of contract claim or expressly consider[ed] YRC's request for summary judgment on that issue." (Order Def.'s Mot. Recons. ¶ 9.) The Court thus decided to treat YRC's motion as a request that the Court decide an issue raised under Rule 56 but left unaddressed by the Court's prior decision, as opposed to a motion for reconsideration. (Order Def.'s Mot. Recons. ¶ 9.)

15.     The Court further noted that, to the extent the Court's previous blanket denial of YRC's summary judgment motion could be read as a ruling on YRC's request for summary judgment as to the ACH Damages issue, North Carolina case law "indicates that a trial court judge has the authority to reconsider his or her own summary judgment ruling." (Order Def.'s Mot. Recons. ¶ 10); *see also Carr v. Great Lakes Carbon Corp.*, 49 N.C. App. 631, 635, 272 S.E.2d 374, 377 (1980); *Miller v. Miller*, 34 N.C. App. 209, 212, 237 S.E.2d 552, 555 (1977); *Levin v. Jacobson*, 2016 NCBC LEXIS 66, at *5 (N.C. Super. Ct. Aug. 25, 2016). The Court thus vacated its previous denial of YRC's summary judgment motion to the extent the Court's decision could be read as denying YRC's request for summary judgment on the sufficiency of Vizant's evidence of ACH Damages. (Order Def.'s Mot. Recons. ¶ 10.)

16.     After providing Vizant time to supplement the summary judgment record and submit briefing on the adequacy of its evidence of ACH Damages and YRC an opportunity to respond, the Court entered an order and opinion on November 15, 2018 granting YRC's motion for summary judgment in part and denying it in part (the "Second Summary Judgment Order" and, together with the First Summary Judgment Order, the "Summary Judgment Orders"). *Vizant Techs., LLC*, 2018 NCBC LEXIS 155, at *10, *33.

17.     The Court's Second Summary Judgment Order noted that under Kansas law, which governs Vizant's breach of contract claim, a party seeking damages for breach of contract "must not only show the injury sustained, but must also show with reasonable certainty the amount of damage suffered as a result of the injury or

breach." *Id.* at \*13 (quoting *Venable v. Imp. Volkswagen, Inc.*, 519 P.2d 667, 674 (Kan. 1974)). To warrant recovery of damages, "there must be some reasonable basis for computation which will enable the jury to arrive at an approximate estimate thereof." *Id.* (quoting *Venable*, 519 P.2d at 674).

18. The Court concluded that Vizant could not prove its ACH Damages with the level of certainty required by Kansas law. Vizant's fee under the PSA's express terms was based on savings YRC achieved "*as a result of* the strategies and solutions . . . identified and recommended by Vizant," (PSA § 6 (emphasis added)), yet all of the evidence Vizant submitted at summary judgment suffered from the same flaw as Emmanuel's ACH Damages calculation—that is, Vizant's evidence showed "nothing more than a net decrease in credit-card-related costs in the months and years following the PSA and a net trend towards increasing ACH payments," *Vizant Techs., LLC*, 2018 NCBC LEXIS 155, at \*21. Vizant argued that this evidence was "sufficient to allow a jury to arrive at a reasonable calculation of Vizant's damages, including the ACH subcategory," but the Court disagreed, explaining:

> without any evidence allowing a factfinder to even begin to discern what portion of YRC's reduced credit card costs may have been tied to YRC's efforts to switch customers to paying by ACH, presenting the current record to a jury and asking it to approximate the claimed ACH Damages would be asking jurors to engage in the same speculation that formed the basis for Emmanuel's unreliable opinions. Kansas law does not allow for Vizant to recover damages on such evidence.

*Id.* at \*32. The Court thus ruled that Vizant would not recover damages "related to savings YRC purportedly achieved as a result of any strategy aimed at causing customers to switch from credit card payments to ACH payments." *Id.* at \*33.

19. On December 14, 2018, Vizant noticed an appeal from the Second Summary Judgment Order pursuant to N.C. Gen. Stat. § 7A-27(a)(3) and Appellate Rule 3. (Pl.'s Notice Appeal 1, ECF No. 221.) Thereafter, Vizant filed the Motion, requesting a stay of these proceedings pursuant to Appellate Rule 8 and N.C. Gen. Stat. § 1-294. (Pl.'s Mot. Stay Proceedings Pending Appeal 1, ECF No. 223.) YRC opposes Vizant's Motion, arguing that Vizant's requested stay is unjustified under applicable law. (YRC's Br. Opp'n Vizant's Mot. Stay 1, ECF No. 239.)

II.

ANALYSIS

20. The Court first addresses whether a discretionary stay is appropriate under Appellate Rule 8 and then proceeds to the parties' arguments concerning N.C. Gen. Stat. § 1-294.

A. Discretionary Stay Under Appellate Rule 8

21. Under Appellate Rule 8(a), "[w]hen appeal is taken in a civil action from a judgment, order, or other determination of a trial court, stay of execution or enforcement thereof pending disposition of the appeal must ordinarily first be sought . . . by application to the trial court for a stay order." N.C. R. App. P. 8(a).

22. There is "limited guidance to assist trial courts in analyzing whether to grant a discretionary stay pending appeal" under Appellate Rule 8. *Rutherford Elec. Membership Corp. v. Time Warner Entm't/Advance-Newhouse P'ship*, 2014 NCBC LEXIS 34, at *8 (N.C. Super. Ct. July 25, 2014). This Court has previously concluded that in weighing whether to grant such a stay, the trial court should focus on the

potential prejudice to the appellant. *Id.* at \*9–10, n.3 (citing *Hilton v. Braunskill*, 481 U.S. 770 (1987), for the four-factor test employed by federal courts). "Whether an appellant can show a substantial likelihood of success on appeal can be a factor in showing prejudice or irreparable harm." *130 of Chatham, LLC v. Rutherford Elec. Membership Corp.*, 2014 NCBC LEXIS 35, at \*9 (N.C. Super. Ct. July 31, 2014). Examining Vizant's appeal here, the Court concludes that the potential for Vizant to be prejudiced by the denial of a discretionary stay is slight.

23. Vizant contends that "the Second Summary Judgment Order create[d] an evidentiary requirement for a causal connection between Vizant's recommendation that YRC move customers to ACH and YRC's savings from moving customers to ACH." (Pl.'s Br. Supp. Mot. Stay Proceedings Pending Appeal 4 [hereinafter "Pl.'s Br."], ECF No. 224.) Vizant goes on to state that "[t]he presence or absence of this requirement is the very issue presented by the PSA's 'identified and recommended clause'" that "was deemed an issue of fact properly left to the jury by the First Summary Judgment Order." (Pl.'s Br. 4.) The grounds for Vizant's appeal thus appear to be, first, its contention that the Second Summary Judgment Order's holding was inconsistent with the holding of the First Summary Judgment Order and, second, that the Second Summary Judgment Order "improperly applie[d] a causal requirement to Vizant's damages claim for fees on savings YRC achieved by moving customers to [ACH] payments." (Pl.'s Mot. Stay Proceedings Pending Appeal 1.) Vizant's appeal is not likely to succeed on either ground.

24. Vizant is mistaken that the Court's two Summary Judgment Orders are in conflict. The First Summary Judgment Order examined whether the Court could resolve as a matter of law the parties' disputed interpretations of the PSA concerning Vizant's entitlement to a fee. That dispute centered on whether the plain language of the PSA definitively answered whether Vizant was entitled to a fee for savings resulting from strategies Vizant put in its report that YRC had either implemented or considered implementing and then subsequently implemented of its own accord. *Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *12; (Pl.'s Br. 2 ("At summary judgment, Vizant contended that this phrase includes costs saved as a result of strategies and solutions Vizant identified, regardless of whether Vizant actually caused YRC to implement the strategies and solutions."); Pl.'s Mem. Law Supp. Mot. Summ. J. 19 [hereinafter "Pl.'s Summ. J. Br."], ECF No. 84 ("[T]he parties intended YRC to pay Vizant for such reductions even if YRC terminate[d] the contract and even if YRC previously considered implementing the identified cost reduction.")).

25. The Court concluded that the relevant definition in the PSA, "Post-Agreement Financial Payment Costs," was ambiguous in this regard because, while some words in that definition carried a plain meaning, *Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *13 ("The meaning of 'recommended' within the PSA is plain[.]"), the word "identified" was susceptible to more than one reasonable interpretation, *id.* at *13–15. As a result of this ambiguity, the Court determined that it could not conclude as a matter of law whether Vizant's entitlement to a fee changed based upon

which party was responsible for YRC's implementation of a recommended strategy. *Id.* at \*18.

26. Later in the First Summary Judgment Order, in assessing whether to exclude Emmanuel's ACH Damages calculation on YRC's motion to exclude, the Court noted a requirement of the PSA that did not appear to be in dispute: that the PSA based the calculation of Vizant's fee, if a fee was due, on those savings achieved "as a result of" the Vizant-recommended strategies. *Id.* at \*26 ("[I]n order to determine this difference in savings, one has to know which reductions in post-agreement costs occurred 'as a result of' the strategies[.]").

27. Indeed, at summary judgment, Vizant consistently supported this reading of the PSA. (Pl.'s Summ. J. Br. 9 ("Under the contract, YRC must continue to pay for cost reductions identified by Vizant and realized by YRC, *but it does not have to pay for cost reductions Vizant did not identify* or YRC did not realize." (emphasis added)); Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 5, ECF No. 180 ("Under [section 24 of the PSA], if YRC terminates the contract, it is required to continue providing data and paying Vizant its fee for Financial Payment Cost Reductions, 'if such Financial Payment Cost Reductions were identified by Vizant.' The provision reiterates that phrase for a second time, *clarifying that YRC is not required to pay a fee for such reductions if they 'were not identified' by Vizant.*" (emphasis added)).)

28. Vizant still maintains this position now. (Pl.'s Reply Br. Supp. Mot. Stay Proceedings Pending Appeal 6 [hereinafter "Pl.'s Reply Br."], ECF No. 243 ("[T]he

Court's position appears consistent with Vizant's position that it is entitled to fees for savings *that resulted from strategies it identified*." (emphasis added)).)

29. Because the PSA clearly required any cost reduction from which Vizant's fee would be calculated to be a "result of" a Vizant-recommended strategy, the Court concluded Emmanuel's ACH Damages calculation—which simply looked at a net decrease in credit-card-related costs and assumed the entirety of that decrease was the "result of" a recommended strategy—was unreliable. *Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *26, *29–30.

30. In the subsequent Second Summary Judgment Order, the Court examined YRC's previously unaddressed argument that Vizant could not forecast evidence from which a factfinder could calculate Vizant's ACH Damages with reasonable certainty. *Vizant Techs., LLC*, 2018 NCBC LEXIS 155, at *11–12. The Second Summary Judgment Order evaluated Vizant's damages evidence under applicable Kansas law, which requires a party seeking damages in a breach of contract action to present evidence constituting "some reasonable basis for computation which will enable the jury to arrive at an approximate estimate thereof" because parties are not entitled to recover "speculative" damages. *Id.* at *13 (first quoting *Venable*, 519 P.2d at 674; then quoting *State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1228 (Kan. 2005)); *see also Venable*, 519 P.2d at 674 (concluding that there was "wholly insufficient" evidence for one category of plaintiff's damages to submit that item to the jury).

31. Thus, the focus of the Second Summary Judgment Order was on the sufficiency of Vizant's damages evidence, not on whether Vizant could prove the existence of a valid contract, its breach, or a resulting injury. Those issues were examined in the First Summary Judgment Order, and as to those issues, the Court concluded that Vizant had forecast "adequate evidence to survive summary judgment" as to whether, under the PSA, "YRC achieved savings by convincing its customers to switch from credit card to ACH" and failed to pay Vizant any compensation. *Vizant Techs., LLC*, 2018 NCBC LEXIS 155, at *17.

32. The separate issue of whether Vizant could forecast evidence that would provide a jury with a reasonable basis to award Vizant a sum for any compensation owed under the PSA was not determined in the First Summary Judgment Order. *Id.* at *17–18. The Court answered this latter issue in the negative in the Second Summary Judgment Order, holding that while there may have been a genuine issue of material fact as to whether YRC implemented and achieved savings from, and thus whether Vizant was entitled to a fee for, Vizant's ACH Recommendation, Vizant's evidence as to what the amount of that fee should be was wholly inadequate to submit the issue of Vizant's claimed ACH Damages to a jury. *Id.* at *17–18, *32–33.

33. The two Summary Judgment Orders were not inconsistent. Vizant's assertion that there is one "causal requirement issue," (Pl.'s Br. 5), that the two orders treat differently is incorrect. The First Summary Judgment Order dealt with whether, under the PSA's terms, Vizant's entitlement to a fee turned upon which party caused YRC to implement a recommended strategy. The Court concluded that

this issue was not capable of resolution as a matter of law. The First Summary Judgment Order also noted—regardless of what "identified" meant—that under the PSA's express terms any fee for Vizant would be based on the savings YRC achieved as a result of a strategy that appeared and was recommended in Vizant's report. This function of the PSA's terms was not disputed and was a primary reason the Court excluded the calculations of Vizant's expert on ACH Damages. *See Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *29 ("This calculation (i) does not abide by the formula in the PSA, which requires a comparison of pre-agreement costs to post-agreement costs resulting from strategies identified by Vizant, (ii) rests on unjustifiable assumptions, and (iii) could mislead a jury into awarding Vizant damages for what was in reality a loss in YRC's business."). Again, contrary to its current position, Vizant has consistently maintained that YRC is not required to pay for savings that were not the "result of" a Vizant-recommended strategy. (*See, e.g.*, Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 5.)

34. The Second Summary Judgment Order, in turn, examined the sufficiency of Vizant's evidence as to the amount of ACH Damages Vizant claimed under Kansas law, taking into account the agreed-upon-and-not-previously-disputed reading of the "result of" language in the PSA. The Court concluded that Vizant had not presented sufficient evidence to allow a jury to award Vizant damages for any unpaid fee owed by YRC for implementing a strategy of switching customers from credit card to ACH payments. This determination does not conflict with the Court's previous decision about the ambiguity of the "identified" language in the PSA in any way.

35. The Court carefully reiterates this point; there is no singular "causal relationship" or "causal requirement issue" addressed by the Summary Judgment Orders, despite Vizant's attempt to frame the issues in this way. The Court's opinions to date have addressed two separate "causal" issues. First, there is a question as to whether Vizant's entitlement to compensation under the PSA turns on which party caused strategies appearing in Vizant's report to be implemented. The jury must answer that question. Second, there is a "causal" requirement provided by the PSA's terms, which, for fee calculation purposes, only counts YRC's savings that were the "result of" a Vizant-recommended strategy. The parties have consistently agreed to this latter reading of the PSA's terms, and the Court has consistently applied the "result of" language in its decisions.

36. The Court thus concludes that Vizant is unlikely to succeed on appeal to the extent its appeal attempts to paint the Court's Summary Judgment Orders as inconsistent.

37. Vizant also appears to contend on appeal that, in addition to being inconsistent, the Court's Second Summary Judgment Order was incorrectly decided. Vizant argues that the Court erroneously interpreted Kansas law to require "causation" to prove damages, that is, a "causal relationship between Vizant's fees and YRC's savings." (Pl.'s Reply Br. 8.) This characterization of the Court's holding is incorrect and confuses the interaction between the PSA and Kansas law.

38. Kansas law is not the primary source of the requirement that Vizant's fees must be linked to the savings YRC achieved as a result of a Vizant-recommended

strategy. That requirement is instead imposed by the PSA. The PSA's terms set Vizant's fees by reference to cost reductions that are the "result of" Vizant's recommended strategies. *Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *26 (citing PSA § 6). Language throughout the contract reinforces this point. (*See, e.g.*, PSA §§ 8, 10 (basing Vizant's fee on monthly "Financial Payment Cost Reductions," which meant "any and all Financial Payment Costs that [were] reduced, recouped, recovered, and realized by [YRC] during the Agreement Term, *provided that they have been identified and recommended by Vizant*" (emphasis added)); PSA § 24 ("Client shall not be required to pay any Fees to Vizant with respect to Financial Payment Cost Reductions that were not identified[.]").) As Vizant still argues now, Vizant was "entitled to fees for savings that *resulted from* strategies it identified." (Pl.'s Reply Br. 6 (emphasis added).) Vizant was not entitled to a fee "for cost reductions Vizant did not identify or YRC did not realize." (Pl.'s Summ. J. Br. 9.)

39.   In this case, one source of damages Vizant alleges is an unpaid fee that Vizant believes it is entitled to receive for savings YRC purportedly achieved as a result of implementing a strategy of switching customers from credit card payments to ACH payments, a strategy Vizant alleges it identified and recommended. Awarding this amount of damages would require a jury to determine the outstanding fee Vizant contends it is owed. *See Stovall*, 107 P.3d at 1228 ("The basic principle of contract damages is to make a party whole by putting it in as good a position as the party would have been had the contract been performed."). In order to calculate this outstanding fee, a jury would have to determine the cost reductions YRC achieved as

a "result of" the strategy of switching customers to ACH payments. Again, this manner of calculating Vizant's fee, and thus its damages, is not dictated by Kansas law, but by the PSA. (*See* PSA §§ 6, 8, 10, 24.)

40. Kansas law requires that a party seeking damages for breach of contract provide a "reasonable basis for computation of damages." *Stovall*, 107 P.3d at 1228. The claimant "must not only show the injury sustained, but must also show with reasonable certainty the amount of damage suffered as a result of the injury or breach." *Venable*, 519 P.2d at 674. Thus, Kansas law supplied the requirement that Vizant's evidence provide a jury with a reasonable basis for, or reasonable certainty as to, the amount of damages to award, while the PSA defined what information should be considered when computing those damages.

41. In the Second Summary Judgment Order, the Court evaluated whether Vizant could provide a jury with a reasonable basis to calculate Vizant's alleged outstanding fee for the ACH Recommendation under the PSA's terms. After reviewing the record, the Court concluded that Vizant could not. Vizant's evidence showed nothing more than a net decrease in YRC's credit card costs and an increase in ACH payments over several years. *Vizant Techs., LLC*, 2018 NCBC LEXIS 155, at *31–32. A jury examining this evidence would have no reasonable basis for determining what portion of the shown reduction in credit card costs was the result of a strategy of switching customers to ACH payments and what portion was attributable to any number of other factors, even by a rough estimate. If allowed to reach the issue of damages, a jury might conclude, as Vizant's expert had, that every

dollar of reduced credit card costs was attributable to a strategy of switching customers to ACH payments. Alternatively, the jury might conclude that the number should be fifty, twenty-five, fifteen, or some other percentage of the cost reduction YRC experienced. Based on Vizant's evidence, none of these conclusions would be less speculative than another. As a result, any amount the jury awarded Vizant as an outstanding fee for the ACH Recommendation would be inherently speculative as well. The Court thus concluded that Vizant could not show with reasonable certainty the amount of ACH Damages it was entitled to recover or provide the jury with a reasonable basis to calculate an award of such damages.

42. The referenced Kansas case law and the evidentiary record, as supplemented, lead the Court to conclude that Vizant is unlikely to persuade the Supreme Court of North Carolina that this Court erred in concluding that Vizant cannot recover the ACH Damages it seeks. The Court's decision rests on well-established Kansas law and a reading of the PSA's terms that neither party disputes. As a result, the Court concludes that Vizant has not proven that it will be prejudiced by the denial of a discretionary stay. Vizant's motion for such a stay under Appellate Rule 8 is therefore denied.

B. Stay under N.C. Gen. Stat. § 1-294

43. "When an appeal is perfected . . . it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein, unless otherwise provided by the Rules of Appellate Procedure." N.C. Gen. Stat. § 1-294. This is equally true "[w]hen a litigant takes an appeal . . . from an *appealable*

interlocutory order[.]" *Veazey v. Durham*, 231 N.C. 357, 363, 57 S.E.2d 377, 382 (1950) (emphasis added). As this State's appellate courts have frequently stated, "an interlocutory order, one that 'does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy,' is generally not appealable" and thus generally not a candidate for immediate review. *SED Holdings, LLC v. 3 Star Props., LLC*, 250 N.C. App. 215, 220, 791 S.E.2d 914, 919 (2016) (quoting *Veazey*, 231 N.C. at 362, 57 S.E.2d at 381). Nevertheless, an interlocutory order will be deemed immediately appealable when it "affects a substantial right that will clearly be lost or irremediably adversely affected if the order is not review[ed] before final judgment." *Id.* at 221, 791 S.E.2d at 919 (quoting *Edmondson v. Macclesfield L-P Gas Co.*, 182 N.C. App. 381, 391, 642 S.E.2d 265, 272 (2007)); *see also* N.C. Gen. Stat. § 1-277(a).

44. On the question of what constitutes a substantial right that will be adversely affected, "a two part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury to [the appellant] if not corrected before appeal from final judgment." *Plasman v. Decca Furniture (USA), Inc.*, 800 S.E.2d 761, 768 (N.C. Ct. App. 2017) (quoting *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990)), *disc. rev. denied*, 812 S.E.2d 849 (N.C. 2018). "The trial court has the authority . . . to determine whether or not its order affects a substantial right of the parties or is otherwise immediately appealable." *RPR & Assocs. v. Univ. of N.C.-Chapel Hill*, 153 N.C. App. 342, 348, 570 S.E.2d 510, 514 (2002); *see also Plasman*, 800 S.E.2d at 768.

The trial court makes this determination on a case-by-case basis, *see SED Holdings, LLC*, 250 N.C. App. at 221, 791 S.E.2d at 919, and the appellant bears the burden of showing that the interlocutory order affects a substantial right, *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994).

45. Vizant argues here that the Court's Second Summary Judgment Order, while interlocutory, is immediately appealable because it leaves Vizant vulnerable to a risk of two trials with inconsistent verdicts and thus affects a substantial right. (Pl.'s Br. 5.) "If Vizant wins its breach of contract case at the first trial," Vizant argues, "and then wins its appeal of this Court's dismissal of its ACH [Damages], Vizant will be forced to relitigate *each and every one* of [a whole] litany of factual issues in a second trial," including the existence of a valid contract and its breach. (Pl.'s Reply Br. 3.)

46. In pursuing its breach of contract claim, Vizant alleges the existence of one contract that was breached in multiple ways. Absent a stay, this matter will proceed to a jury trial commencing on May 20, 2019 on Vizant's allegations that it is owed compensation for its account management fee recommendation while the Court's dismissal of Vizant's ACH Damages claim is on appeal. Should Vizant prevail on its appeal, Vizant is concerned that a jury in a second trial on the ACH Recommendation and alleged ACH Damages may make findings or draw conclusions as to the existence of a contract between the parties or the meaning of the PSA's terms that would conflict with jury findings on these same issues in the first trial.

47. YRC responds by asserting that even if Vizant's characterization of the Court's Summary Judgment Orders is accurate, the present state of this case does not present a risk of inconsistent verdicts. Instead, YRC argues that, at most, Vizant faces the possibility of a first trial resulting in a jury verdict that would be vacated if, on appeal, the Supreme Court of North Carolina determines that this Court erred in its application of the law and instructions to the jury. YRC contends that this is so because "[the first] verdict would have been based on this Court's instruction that the PSA contains" the "causal requirement" Vizant takes issue with in the Second Summary Judgment Order. (YRC's Br. Opp'n Vizant's Mot. Stay 10.) Additionally, YRC argues, should Vizant succeed on appeal and be permitted to address the issue of its claimed ACH Damages in a second trial, Vizant will not need to reprove each and every question of fact necessary to establish a valid contract and the meaning of that contract's terms because such issues will be determined in the first trial and subject to collateral estoppel.

48. Ordinarily, a party's preference for having all claims or issues "determined during the course of a single proceeding does not rise to the level of a substantial right." *Hamilton v. Mortg. Info. Servs.*, 212 N.C. App. 73, 79, 711 S.E.2d 185, 190 (2011). However, a substantial right is affected "when the same issues are present" in more than one trial and this correspondence of issues "creat[es] the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 167, 684 S.E.2d 41, 47 (2009); *see also Green v. Duke Power Co.*, 305 N.C. 603, 608, 290

SE.2d 593, 596 (1982) ("Ordinarily the possibility of undergoing a second trial affects a substantial right only when the same issues are present in both trials, creating the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue.").

49. "The mere fact that claims arise from a single event, transaction, or occurrence does not, without more, necessitate a conclusion that inconsistent verdicts may occur unless all of the affected claims are considered in a single proceeding." *Hamilton*, 212 N.C. at 80, 711 S.E.2d at 190. Our State's appellate courts have found, however, that a substantial right can be adversely affected in cases where certain claims are resolved before trial while others continue and "there are overlapping factual issues between the claim[s] determined and any claims which have not yet been determined." *Carcano*, 200 N.C. App. at 168, 684 S.E.2d at 47 (quoting *Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 26, 376 S.E.2d 488, 492 (1989)).

50. Reviewing Vizant's claim, applicable Kansas and North Carolina law, and the parties' arguments, the Court agrees with Vizant. Should the Court proceed to try the remaining portions of Vizant's breach of contract claim while Vizant appeals the Court's Second Summary Judgment Order, the issues considered by a factfinder at the presently scheduled trial will substantially overlap with those considered by a factfinder in a possible second trial such that a risk of inconsistent verdicts may follow.

51. To begin with, there appears to be some confusion as to whether the Court's Second Summary Judgment Order precluded Vizant from proving a breach of

contract claim premised on YRC's failure to compensate Vizant for the ACH Recommendation at trial or whether the Court's decision allows Vizant to still argue the existence of a contract and its breach with regard to this recommendation while precluding Vizant from recovering actual damages due to YRC's nonpayment. Under Kansas law, the Court's decision appears to effect the former of these two possibilities.

52. The Supreme Court of Kansas has not directly addressed whether a material breach, standing alone, is sufficient to sustain a breach of contract claim and entitle a plaintiff to nominal damages in the absence of proof of actual damages. *See All W. Pet Supply Co. v. Hill's Pet Prods. Div.*, 840 F. Supp. 1433, 1440–41 (D. Kan. 1993). Federal courts sitting in Kansas have concluded that Kansas law does (or would, if confronted with the issue) allow a plaintiff to maintain a breach of contract action based solely on material breach. *See Neonatal Prod. Grp., Inc. v. Shields*, 312 F. Supp. 3d 1010, 1026–27 (D. Kan. 2018); *Sprint Nextel Corp. v. The Middle Man, Inc.*, No. 12-2159-JTM, 2015 U.S. Dist. LEXIS 3792, at *4–5 (D. Kan. Jan. 13, 2015); *All W. Pet Supply Co.*, 840 F. Supp. at 1441. There is some support for that view in older Kansas case law. *See Freeto Constr. Co. v. Am. Hoist & Derrick Co.*, 457 P.2d 1, 5–6 (Kan. 1969); *Wolfert Landscaping Co. v. LRM Indus., Inc.*, No. 106989, 2012 Kan. App. Unpub. LEXIS 966, at *12 (Kan. Ct. App. Nov. 2, 2012) ("As a general rule, when a party establishes a material breach of contract it is entitled to nominal damages at a minimum."). Recent statements by Kansas appellate courts, however, indicate that the opposite is true.

53. In 2013, the Supreme Court of Kansas pronounced that "damages to the plaintiff caused by the breach" is an element of a breach of contract claim. *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013). While that case did not address the availability of nominal damages in Kansas, subsequent appellate case law from Kansas has treated damages as an essential element of a breach of contract claim. *See Hendrix v. Sheridan*, No. 117,112, 2018 Kan. App. Unpub. LEXIS 378, at *17 (Kan. Ct. App. May 18, 2018) (affirming summary judgment against plaintiff when plaintiff failed to prove he was damaged as a result of a breach of contract); *All. Platforms, Inc. v. Behrens (Moxy Solutions, LLC)*, 305 P.3d 30, 35 (Kan. Ct. App. 2013) (treating damages as a necessary element of a breach of contract claim). This approach is mimicked by the most recent version of the Kansas pattern jury instructions. PIK Civ. 4th 124.01-A ("The essential elements of an action based on a contract are: . . . (5) Damages to plaintiff caused by the breach.").

54. In light of this authority treating actual damages as an element of a breach of contract claim, and in the absence of clear Kansas case law holding that a party may proceed on a breach of contract claim merely to prove material breach and receive nominal damages, the Court concludes that its ruling in the Second Summary Judgment Order effected a dismissal of Vizant's breach of contract claim to the extent Vizant sought to prove a breach of contract based on nonpayment of fees owed for its

ACH Recommendation. As a result, that ground for Vizant's breach of contract claim is out of the case.[2]

55. Consequently, Vizant finds itself in a novel position. Vizant has alleged multiple breaches of a single contract, which, by its terms, may entitle Vizant to actual (and distinct) damages for YRC's alleged failure to compensate Vizant for each recommendation that was allegedly implemented. Absent a stay, Vizant will proceed to trial based on one of the alleged breaches of the PSA that purportedly resulted in actual damages (the account management fee recommendation), but not the other (the ACH Recommendation). The Court concludes that a reversal of the Court's decision precluding Vizant from pursuing its breach of contract claim based on the ACH Recommendation may result in a second trial that would involve substantially the same factual issues as the first.

56. In particular, in the event the Supreme Court of North Carolina concludes that this Court did not misinterpret the PSA but should have permitted the jury to consider an award for Vizant's ACH Damages under Kansas law, Vizant will have to go through a first breach of contract trial on the management fee recommendation followed, after the successful appeal, by a second breach of contract trial on the ACH

---

[2] The Court is sympathetic to the views of the federal district court judges in Kansas who have held that Kansas law allows for the recovery of nominal damages for breach of contract. Each member of that bench possesses an unquestionable understanding of Kansas law and may well have correctly forecast the stance the Supreme Court of Kansas will take if presented with the apparent inconsistency between prior case law, *see Freeto Constr. Co.*, 457 P.2d at 5–6, and the recent trend of viewing damages as an element of breach of contract claims, *Stechschulte*, 298 P.3d at 1098. In the present case, however, the Court concludes it must follow the most recent applicable Kansas appellate authority, which supports treating actual damages as an element of a breach of contract claim under Kansas law, thus precluding an award of nominal damages for Vizant.

Recommendation. In this scenario, Vizant would not only have to prove its ACH damages in a second trial but would also have to prove a breach of the PSA based on YRC's failure to compensate Vizant for the ACH Recommendation. Because this basis for Vizant's breach of contract claim would require a jury to examine the same provisions of the PSA that would be in dispute in Vizant's first trial, the same factual issues would be presented for jury determination in both trials.

57. Our appellate courts have found a substantial right was affected in similar cases. For example, in *Carcano* our Court of Appeals concluded that a substantial right was affected where various dismissed claims and a continuing breach of contract claim were based upon the same factual issues, specifically, whether the defendants had made false representations to the plaintiffs while the parties were contracting to form and investing in a limited liability company. *Carcano*, 200 N.C. App. at 168, 684 S.E.2d at 47. Because the continuing contract claim and the dismissed, appealed claims shared overlapping factual issues, the Court of Appeals concluded that inconsistent verdicts could result and the appeal of the interlocutory order was proper. *Id.*; *see also Shallotte Partners, LLC v. Berkadia Commercial Mortg., LLC*, No. COA15-89, 2015 N.C. App. LEXIS 561, at *10 (N.C. Ct. App. July 7, 2015) (holding that a risk of inconsistent verdicts was present where dismissed claims for breach of fiduciary duty and constructive fraud were based on the same agreement as a continuing breach of contract claim).

58. In this case, Vizant's dismissed basis for its breach of contract claim and its continuing basis for that claim share an even greater overlap of factual issues. Both

grounds for the claim are based upon the PSA, and pursuing either alleged breach will require Vizant to put many of the same factual issues to a jury. *See Stechschulte*, 298 P.3d at 1098 (stating that, under Kansas law, "[t]he elements of a breach of contract claim are: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach"). Given the wide range of factual issues the parties dispute, including the existence of a valid contract, the sufficiency of the consideration for that contract, the meaning of the contract's terms, whether Vizant performed, whether each or any of the breaches Vizant alleges occurred, and whether Vizant is owed any damages, two juries might reach very different conclusions on whether YRC was obligated to Vizant or breached its obligations under the PSA.

59. The Court is not convinced that this risk is neutralized by the doctrine of collateral estoppel, as YRC argues. YRC contends that collateral estoppel dictates that, in the event of a second trial, all those issues determined by the jury in the first trial that were not affected by any reversible error will be binding upon the outcome of the second trial, and thus the parties do not face the possibility of inconsistent verdicts. As traditionally applied, however, the doctrine of collateral estoppel means "a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the *prior action* in a *later suit* involving a *different cause of action* between the parties or their privies." *Thomas M. McInnis & Assocs., Inc. v.*

*Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 557 (1986) (emphasis added). YRC has not provided the Court with case law applying this doctrine to preserve certain factual determinations by a jury in one trial as binding on a jury in a second trial in the same case on the same or substantially related causes of action, and the Court's research has not uncovered any such authority. The Court therefore concludes that collateral estoppel does not protect the parties against the possibility of inconsistent verdicts here.

60. The Court also disagrees with YRC's assertion that the Court of Appeals' unpublished decision in *Shareheart Development Corp. v. Pamlico County*, No. COA07-704, 2007 N.C. App. LEXIS 2520 (N.C. Ct. App. Dec. 18, 2007), is applicable or persuasive here. In *Shareheart*, the defendant county tried to apply an ordinance to a real estate project the plaintiff developed. *Id.* at *2. The plaintiff sought declaratory relief that the ordinance did not apply to the project and damages for alleged violations of its constitutional rights. *Id.* On plaintiff's motion for judgment on the pleadings, the trial court held that the ordinance did not apply to the project but left the plaintiff's claims regarding violations of its constitutional rights unresolved, and the defendant appealed. *Id.* at *6–7. The Court of Appeals concluded that the trial court's order was not immediately appealable because the defendant did not face a risk of inconsistent verdicts. *Id.* at *7. The court explained:

> If this Court reversed the trial court's order for partial judgment on the pleadings, one of two results might obtain. If only issues of law were presented and the Court determined that Defendant was entitled to judgment, we could remand for entry of judgment in favor of Defendant. Alternatively, if issues of fact were presented regarding the application of the Ordinance to the Project, the Court might reverse and remand for a new trial

wherein the jury would resolve the pertinent factual issues. In either event, the jury verdict in favor of Plaintiff would be vacated because of its reliance on the presumption that the Ordinance was inapplicable to the Project. This eliminates the possibility of two trials with inconsistent verdicts.

*Id.* at *6–7.

61. The situation facing this Court is more complicated. Unlike in *Shareheart*, where the appeal in question would result either in an entry of judgment in favor of the appellant or a reversal, a vacated jury verdict, and a retrial, here more potential outcomes exist. As mentioned above, Vizant may succeed on its claim for breach of contract based on the account management fee recommendation. Following Vizant's success at trial, the Supreme Court of North Carolina may conclude that while this Court interpreted the PSA correctly and was correct in its statements of Kansas law, the issue of ACH Damages should have been submitted to the jury and Vizant should have been allowed to proceed on its claim for breach of contract based on the ACH Recommendation.

62. In this scenario, the appellant will have won its appeal, but unlike in *Shareheart*, Vizant will not be entitled to an immediate entry of judgment in its favor, and the jury verdict from the first trial will not be vacated because of an erroneous instruction on the law. The second trial on Vizant's ACH Recommendation and ACH Damages will require a second jury to examine many of the same issues of fact underlying the first jury verdict. Even assuming, as YRC argues, that the verdict from the first trial was binding upon the second jury on factual questions identical to both grounds for Vizant's claim—i.e., (i) the existence of a contract between the parties, (ii) sufficient consideration to support the contract, and (iii) Vizant's

performance or willingness to perform in compliance with the contract—the second jury would still have to determine whether YRC breached the PSA in connection with the ACH Recommendation and whether that breach damaged Vizant. To answer those questions, particularly breach, the second jury will again have to resolve ambiguities in the same provisions of the PSA to determine the nature of the parties' agreement and YRC's obligations under the agreement. The second jury may resolve those ambiguities differently than the previous jury. This possibility creates a risk of inconsistent verdicts.

63. In conclusion, though the potential for Vizant to be prejudiced by the denial of a stay in these proceedings is slight, and Vizant's chance of success on appeal appears slim, the unique characteristics of Vizant's breach of contract claim and the large number of unresolved and overlapping factual questions common to the multiple grounds on which Vizant asserts a breach of the PSA create the potential for inconsistent verdicts. Thus, the Court concludes that a substantial right is affected and that Vizant's appeal is proper. The Court will therefore stay the currently scheduled trial and all other proceedings in this action under N.C. Gen. Stat. § 1-294 pending resolution of Vizant's appeal of the Second Summary Judgment Order to the Supreme Court of North Carolina.[3]

---

[3] YRC also argues that Vizant has no basis to move for a stay under N.C. Gen. Stat. § 1-294 because the issue Vizant seeks to appeal—the "causation" holding Vizant attributes to the Second Summary Judgment Order—was actually decided in the First Summary Judgment Order, from which Vizant did not notice an appeal. (YRC's Br. Opp'n Vizant's Mot. Stay 14.) Regardless, however, of whether Vizant has appealed the issue it intended to appeal, Vizant has filed a timely notice of appeal seeking review of the Second Summary Judgment Order. N.C. R. App. P. 3(c); (Pl.'s Notice Appeal 1). As noted above, the Second Summary Judgment

III.

CONCLUSION

64.    **WHEREFORE**, the Court hereby **ORDERS** as follows:

a. To the extent the Court retains jurisdiction to consider the issue, Vizant's Motion is **DENIED** as to Vizant's request for a discretionary stay under Appellate Rule 8.

b. To the extent Vizant's Motion seeks a stay pursuant to N.C. Gen. Stat. § 1-294, Vizant's Motion is **GRANTED**.  All proceedings in this action are hereby stayed under N.C. Gen. Stat. § 1-294 until further order of the Court pending resolution of Vizant's appeal of the Second Summary Judgment Order to the Supreme Court of North Carolina.[4]  Vizant shall notify the Court, by e-mail to the Court's law clerk, of the disposition of Vizant's appeal within three business days after Vizant receives notice of the disposition of that appeal.

---

Order precluded Vizant from recovering actual damages related to its ACH Recommendation and, under Kansas law, effected a dismissal of Vizant's breach of contract claim to the extent the claim was based on Vizant's ACH Recommendation.  Vizant's appeal has conferred jurisdiction on the Supreme Court of North Carolina to review the Second Summary Judgment Order, N.C. Gen. Stat. § 7A-27(a)(3); *Johnson v. Rowland Motor Co.*, 168 N.C. App. 237, 238, 606 S.E.2d 711, 711 (2005), and, for the reasons stated herein, proceeding with this case while Vizant's appeal is pending creates a risk of inconsistent verdicts and thus affects a substantial right.

[4]  The Court will not proceed with the hearing and determination of the parties' currently pending motions *in limine* until the Court lifts the stay ordered hereunder.

**SO ORDERED**, this the 1st day of March, 2019.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge